Margaret WALLSCHLAEGER,
Plaintiff-Appellant,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services,
Defendant-Appellee.

No. 82–1847.

United States Court of Appeals,
Seventh Circuit.

Argued March 1, 1983.

Decided April 5, 1983.

Craig Allan Willette, Rockford, Ill., for plaintiff-appellant.

James W. Miles, Dept. of Health & Human Services, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, and WOOD and POSNER, Circuit Judges.

POSNER, Circuit Judge.

We are asked to set aside a district court decision affirming the denial of a claim for Social Security disability benefits. As a young woman Mrs. Wallschlaeger had her thyroid gland removed and in the course of the operation her vocal cords became partially paralyzed. The paralysis did not significantly affect her speech as one might expect but did narrow the airway in the throat and make breathing difficult—how difficult is a question we shall come to in due course. Despite her affliction she continued doing light factory assembly work off and on till sometime in 1965 (the operation had been in 1957) and she bore three children. She has declined to undergo surgery that might ameliorate her condition.

She applied for disability benefits in 1977, was denied them through the various tiers of the Social Security claims system, and then appealed to the federal district court under 42 U.S.C. § 405(g). The magistrate who heard the case by agreement of the parties upheld the administrative law judge's finding that "the testimony of the claimant and the medical evidence of record also indicate that the claimant's breathing problem is not severe enough to preclude substantial gainful work activity of a sedentary classification such as the claimant has previously performed or for which she would have some transferrable skills," but the magistrate thought she might be psychologically impaired and remanded the case to the Social Security Administration to take evidence on that question. The case was assigned to another administrative law judge; a psychologist and psychiatrist submitted reports; and after reviewing the evidence from the previous hearing plus the reports submitted on remand, the administrative law judge found that she was not disabled, and the magistrate and the district judge upheld his finding.

■ Disability means, so far as is relevant here, "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment," 42 U.S.C. § 423(d)(1)(A), of "such severity that [the applicant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...," 42 U.S.C. § 423(d)(2)(A). If we ask simply whether there is substantial evidence, see 42 U.S.C. § 405(g), that Mrs. Wallschlaeger is not disabled within the meaning of the statute—postponing for a moment our entry into the byzantine labyrinth of the Social Security Administration's regulations—our answer must be "yes."

We can put to one side any suggestion of mental impairment; although the evidence put in on remand shows that Mrs. Wallsch-

laeger is of below-average IQ and has various neuroses such as anxiety and hypochondria, there is no convincing evidence that these conditions are disabling. The only serious issue is whether the breathing problem caused by the 1957 thyroidectomy is disabling. On this the evidence is conflicting. Several doctors opined, though without much elaboration (e.g., "This patient is unable to perform any activity that would require any degree of physical exertion, therefore being disabled"), that her breathing problem was disabling. One, Dr. Lewis, did not report any disabling impairment; and the psychiatrist who interviewed her, observing among other things that she became angry at some of his questions yet exhibited no difficulty in breathing, concluded that she was "largely malingering."

The reason for the conflict in the evidence is that while everyone agrees that Mrs. Wallschlaeger has a partial paralysis of the vocal cords that has narrowed the airway to her lungs, the extent of her breathing difficulty apparently cannot be, or at least has not been, determined by objective tests, but only by observing her. The opportunity to observe her is one of the inestimable advantages that the first administrative law judge in this case had over us.

■ The administrative law judges were entitled to take into account the fact that Mrs. Wallschlaeger has managed to function as a wife and mother for 20 years despite her breathing impairment, and came through three pregnancies during this period with no difficulty. (She has been married seven times altogether, and has raised 10 children.) Moreover, she did light factory work for six months as late as 1965, eight years after the thyroid operation. There is no indication that her breathing has gotten worse since 1965; so if she was able to do light work then, she should be able to do it now. She is not immobilized. "This patient's typical day [reported the psychiatrist on the basis of his interview with her] consisted of the following: On the Sunday prior to the interview, she claimed that she walked around and waited on people in a flea market for a friend. At this job she takes their money and plays a record player. She said that she sold junk dishes, candy, fudge, brownie[s] which she makes at home. She said that she can fix meals, read the paper[,] make beds and is quite proud of making her own clothes, by sewing. She also claimed to make quilts. She also goes to the C.I.O. Hall to help with bingo games, where she pops popcorn and makes sandwiches, claiming that she gets $6.00 and is allowed to play bingo. She said that she goes grocery shopping with a sister, goes to relief office, the food stamp place, and also belongs to the Eagles' Club. At the club she said that she [waits?—transcript is illegible] tables when they have an affair. She also claimed to have gone to a Christmas Party last week and had a good time. She said that she also belongs to the Baltic Club and goes to meetings occasionally. She said that she attends several club meetings at least once a month." The psychologist who examined Mrs. Wallschlaeger reported that her greatest ambition in life was "getting my SSI [supplemental security income, the technical name for the class of benefits that includes the disability benefits she is seeking in this case] through," and that one of her "three wishes" was "to get her SSI before she dies." Two administrative law judges, a federal magistrate, and a federal district judge have found no basis for deeming her disabled.

■ Her main argument on appeal to this court is that no vocational expert testified that jobs similar in their requirements of skill and exertion to the light factory work that she did before she stopped working in 1965 still exist in the national economy and that her disability claim could not be rejected without such testimony. The argument, a complex one, begins with 20 C.F.R. § 416.969, which introduces the "grid" that the Social Security Administration uses these days to determine disability. The grid is a matrix of factors for determining automatically whether an individual disabled from doing his previous work is able to do other work. *Cummins v. Schweiker,* 670 F.2d 81, 82 (7th Cir.1982).

**196**

Among the factors is the applicant's previous work experience, defined in 20 C.F.R. § 416.965(a) as experience acquired in a job held within the last 15 years. Ignoring, as shall we, the question whether the application for disability benefits stops the running of the 15-year period, in which event Mrs. Wallschlaeger's last employment would be relevant work experience under the regulation, she asks us to find that the agency should have rated her work experience as nil because it took place more than 15 years ago, and she argues that such a rating, together with the other factors in the grid matrix, would dictate a finding of disability.

Some of the difficulties with this argument are elucidated in the First Circuit's opinion in *Lopez-Diaz v. Secretary of Health & Human Services,* 673 F.2d 13, 15 (1st Cir.1982), but need not be repeated here because there is a more fundamental objection. As explained in another recent First Circuit opinion, *Goodermote v. Secretary of Health & Human Services,* 690 F.2d 5, 6–7 (1st Cir.1982), the determination of disability under the Secretary's regulations is sequential. (Although *Lopez-Diaz* and *Goodermote* involved a different set of regulations—20 C.F.R. part 404, which governs disability claims by applicants insured under the social security system, as distinct from applicants such as Mrs. Wallschlaeger who are not insured but are seeking SSI disability benefits under subpart 416—the two sets are very similar.) An applicant must clear a series of hurdles before getting on to the grid. The first is to demonstrate a severe impairment. "If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience." 20 C.F.R. § 416.920(c). If you have a severe impairment, "we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. *If you can still do this kind of work, we will find that you are not disabled.*" 20 C.F.R. § 416.920(e) (emphasis

added). See also 20 C.F.R. § 416.961. So if Mrs. Wallschlaeger either does not have a severe impairment, or has a severe impairment but not one that prevents her from doing the kind of work she has done in the past, she is not disabled no matter how many years ago she last worked.

There is a reason why the 15-year cut-off does not come into play if the initial hurdles are not cleared. The purpose of the grid is to determine whether someone disabled by a severe impairment from doing the kind of work he has done in the past can do some other, less demanding type of work. What is pertinent to that inquiry is not past work as such but skills obtained in past work, and the 15-year cut-off recognizes that work skills are likely to atrophy if unused for a long time. Although atrophy of skills is a problem not only when the question is whether your old skills are transferrable to a new type of job but also when it is whether you can do the type of job in which the skills were originally acquired but may have been lost through passage of time, the Social Security Administration has not adopted any cut-off date for cases where the applicant's impairment does not prevent him from doing his former work. This is shown by the fact that the term "vocationally relevant past work," which we take to mean (the term not being defined in the regulations) work relevant to other work that the applicant might do, appears in 20 C.F.R. § 416.969, a grid regulation, but not in 20 C.F.R. §§ 416.920(c) or (e); and is further shown by 20 C.F.R. § 416.920(f)(1), which provides: "If you cannot do any work you have done in the past because you have a severe impairment, we will consider your residual functional capacity and your age, education, and past work experience to see if you can do other work. If you cannot, we find you disabled." The validity of this regulation is not challenged, and hardly could be when the statute itself, 42 U.S.C. § 423(d)(2)(A), requires the applicant to show that he is "unable to do his previous work . . . ."

But even if the 15-year cut-off has a broader application than we think it does, it cannot possibly come into play, even under the appellant's own view of the interplay between 20 C.F.R. §§ 416.965(a) and 416.969, unless the applicant has a "severe medically determinable impairment," 20 C.F.R. § 416.969; and the passage we quoted at the beginning of this opinion from the first administrative law judge's decision indicates that he did not think Mrs. Wallschlaeger had a severe impairment. The second administrative law judge found similarly that "the claimant's impairments are not severe enough, singly or in combination, to warrant a finding of disability based on medical considerations alone . . . ." These findings are supported by substantial evidence. The regulations provide two methods of determining whether an applicant has a severe impairment. The first is to consult the list of impairments in Appendix 1 to 20 C.F.R. part 404. If the applicant's impairment appears on the list "or is equal to a listed impairment," the impairment is deemed severe. 20 C.F.R. § 416.920(d). Mrs. Wallschlaeger's impairment neither is listed nor is equal to a listed impairment. See Appendix 1, *supra,* § 3.00. The other method is to inquire directly whether the applicant has "any impairment(s) which significantly limit your physical or mental ability to do basic work activities," 20 C.F.R. § 416.920(c). "Basic work activities" are defined as "the abilities and aptitude necessary to do most jobs"—walking, standing, seeing, carrying out simple instructions, and so forth. 20 C.F.R. § 416.921(b). Mrs. Wallschlaeger can do all of these activities to some extent—even we suppose some light lifting—and in any event we agree with the First Circuit, construing the parallel though not identical regulation in part 404, that the Social Security Administration has some flexibility in determining that an applicant can do basic work activities even if he cannot do everything that the regulation lists as an illustration of such an activity. *Goodermote, supra,* 690 F.2d at 8. Moreover, the regulation is somewhat casually worded, in the probably vain hope that it would be intelligible to applicants, and is not to be construed as if it were a statute; yet even so construed, we doubt it could be read to make the lifting of heavy objects or any other strenuous physical exertion an indispensable element of basic work activities.

The administrative law judge should have stopped with the passage quoted above. Only a "medically determinable . . . impairment" is within the purview of the statute. 42 U.S.C. § 423(d)(1)(A). "Your impairment must be severe . . . before we can find you to be disabled." 20 C.F.R. § 416.920(a). The administrative law judge had found that Mrs. Wallschlaeger did not have a severe medically determinable impairment; that finding barred her claim under the statute and regulations. But he went on to find that "she may still be found disabled if she is unable to perform her prior work or other jobs for which she is qualified." This is technically incorrect under the regulations. If you do not have a severe impairment you are not disabled even if you have some slight impairment that disables you from performing any work which you have or are qualified to do. But in a practical sense an impairment that prevents an applicant from doing any work he is qualified to do is a severe impairment, for by hypothesis it is totally disabling, and the statute itself—42 U.S.C. § 423(d)(2)(A) again—defines "severe" in just that practical way.

In any event, having decided to consider Mrs. Wallschlaeger's ability to perform her prior work or other work for which she was qualified, as distinct from the ability he had just found she still had to perform basic work activities, the administrative law judge found that she indeed could do the light factory work she had done in the past. Unnecessary though it may have been, this finding too is supported by substantial evidence and provides, for the reasons explained earlier, an alternative ground for denying her application. The statute does not seek to foster a type of welfare dependency that consists of, in the psychiatrist's description of Mrs. Wallschlaeger, "using and exaggerating physical

symptoms in the pursuit of a goal recognizable by the patient for financial compensation and [to] avoid some work."

AFFIRMED.