**David MOORE, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**Civ. No. 83–0046–B.**

United States District Court, D. Maine.

Nov. 17, 1983.

Richard A. Estabrook, Downeast Law Offices, Bangor, Me., for plaintiff.

Paula D. Silsby, Asst. U.S. Atty., Portland, Me., for defendant.

## ORDER AFFIRMING THE DECISION OF THE SECRETARY

CYR, District Judge.

This action is brought under section 205(g) of the Social Security Act, as amended [Act], 42 U.S.C. § 405(g), for review of the final decision of the Secretary of Health and Human Services [Secretary] affirming the termination of plaintiff's period of disability and disability insurance benefits.

On April 5, 1971 plaintiff was found to be disabled as of October 15, 1970 [Tr. 86–87], as a result of injuries to his eye (and resulting poor vision) apparently sustained in an automobile accident. On February 1, 1982, plaintiff's benefits were terminated administratively [Tr. 98–99]. The Social Security Administration administrative law judge [ALJ], before whom plaintiff, his wife, his attorney, a psychologist, and a medical adviser appeared, determined *de novo* that plaintiff was not disabled within the meaning of section 223(d) of the Act, 42 U.S.C. § 423(d). The ALJ found that although the plaintiff has a variety of "impairments," [1] those impairments do not significantly limit plaintiff's ability to do basic work activities and thus are not severe, 20 C.F.R. § 404.1521 (1983), as required by 20 C.F.R. § 404.1520(c). Plaintiff has exhausted his administrative remedies.

Both parties move for summary judgment. Plaintiff challenges the regulation requiring claimants to establish a severe impairment, and contends that the record evidence does not adequately support the finding of nonseverity.

■ In order to receive disability insurance benefits a claimant must be disabled. "Disability" is defined as

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... [lasting at least a year and] of such severity that [the claimant] ... is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him or whether he would be hired if he applied for such work.

42 U.S.C. § 423(d). In 1978, the Secretary prescribed five sequential tests for determining whether a claimant is disabled. *See* 43 Fed.Reg. 55349 (1978), *codified as amended,* 20 C.F.R. § 404.1520. *See also*

---

1. The ALJ found,

The claimant now has the following medically determinable impairments: a medically undocumented history of alcohol abuse; status post multiple skull fractures and trauma; central scotoma in the right eye; best correctable vision in the right eye of 20/200 and of 20/20 in the left eye; asymptomatic Grade I spondylolisthesis of L5 and S1; polyarthralgias in the low back, probably related to muscle spasm; currently asymptomatic chronic subluxation of C–2 and C–6; and mild organic brain syndrome associated with past trauma.

[Tr. 17.]

*Goodermote v. Secretary of Health and Human Services,* 690 F.2d 5, 6–7 (1st Cir. 1982). The second sequential test requires that a claimant have a severe impairment, that is, an impairment which "significantly limits [his] physical or mental ability to do basic work activities," 20 C.F.R. § 1520(c). Basic work activities are the abilities and aptitudes necessary to do most jobs, including:

> (1) the physical ability to walk, stand, sit, lift, push, pull, reach, carry or handle;
>
> (2) the ability to see, hear and speak;
>
> (3) the mental ability to understand, remember and follow simple instructions;
>
> (4) the ability to make judgments;
>
> (5) the ability to respond appropriately to supervisors, co-workers and usual work situations; and
>
> (6) the ability to deal with changes in a routine work setting.

*Id.* § 404.1521(b). The second test thus focuses on "medical" considerations, without considering "vocational factors." [2] 20 C.F.R. § 404.1520(c) (1982). *See Goodermote v. Secretary of Health and Human Services,* 690 F.2d at 7.

Plaintiff contends that by overemphasizing "medical" concerns this second test "disrupts the vocational focus of the disability determination process which is mandated by the statute and the courts." [Plaintiff's Memorandum at 6].[3]

> The Social Security Act directs the Secretary to 'adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same' in disability cases. 42 U.S.C. § 405(a). As we

previously have recognized, Congress has 'conferred on the Secretary exceptionally broad authority to prescribe standards for applying certain sections of the ... Act.' *Schweiker v. Gray Panthers,* 453 U.S. 34, 43, 101 S.Ct. 2633, 2639, 69 L.Ed.2d 460 (1981); see *Batterton v. Francis,* 432 U.S. 416, 425, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977). Where, as here, the statute expressly entrusts the Secretary with the responsibility for implementing a provision by regulation, our review is limited to determining whether the regulations promulgated exeeded (sic) the Secretary's statutory authority and whether they are arbitrary and capricious. *Herweg v. Ray,* 455 U.S. 265, 275, 102 S.Ct. 1059, 1066, 71 L.Ed.2d 137 (1982); *Schweiker v. Gray Panthers, supra,* 453 U.S. at 44, 101 S.Ct. at 2640.

*Heckler v. Campbell,* —— U.S. ——, ——, 103 S.Ct. 1952, 1957, 76 L.Ed.2d 66 (1983) [footnote omitted].

Although "vocational" factors are relevant to some disability determinations, the statute and its history demonstrate the primary importance of medical considerations. The definition of "disability" requires that a claimant suffer an impairment "of such *severity* that he is ... unable to do his previous work [or] [in view of 'vocational' factors] other ... work...." Assuredly, the ambiguous reference to "severity" may have been included for grammatical reasons, rather than to introduce an independent "severity" requirement. But this pithy definition contains other partially veiled "tests." For example, the introduction in 1968 of the correlative conjunctions, "not

---

**2.** "Medical" factors are impairments and their work-related effects. "Vocational" factors, i.e., experience, education and age, are the other factors which affect the ability to work. *Compare* 20 C.F.R. § 404.1520 (1982) [stating that absent a severe impairment "vocational factors" will not be considered] *with* 20 C.F.R. § 1520(c) (1983) [stating that absent a severe impairment "age, education and work experience" will not be considered].

**3.** The Secretary mistakenly contends that the severity test was upheld in *Goodermote v. Secretary of Health and Human Services,* 690 F.2d 5

(1st Cir.1982), and *Lofton v. Schweiker,* 653 F.2d 215 (5th Cir.1981). Neither opinion speaks to the validity of the severity test. In two unpublished opinions, however, the Tenth Circuit apparently has upheld the test. *See McCoy v. Schweiker,* 683 F.2d 1138, 1145 n. 6 (8th Cir. 1982) [discussing *Hilton v. Schweiker,* No. 81–1139 (10th Cir. Feb. 26, 1982), and *Chapman v. Schweiker,* No. 81–1025 (10th Cir. Feb. 26, 1982) ]. The test has been held invalid in *Scruggs v. Schweiker,* 559 F.Supp. 100, 103 (M.D.Tenn.1982).

only" and "but also," P.L. 90–248 § 158, 81 Stat. 821, 867–68, apparently embraced the judicially established rule, *e.g., Torres v. Celebrezze,* 349 F.2d 342, 345 (1st Cir.1965), that the burden shifts to the Secretary once the claimant shows that a severe impairment prevents the claimant from performing past work. *See Small v. Califano,* 565 F.2d 797, 800–01 (1st Cir.1977). The requirement that the impairment result from abnormalities "which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques," 42 U.S.C. § 423(d)(3), and the requirement that the claimant furnish "such medical and other evidence [of his disability] as the Secretary may require," *id.* § 423(d)(5), further evidence the importance Congress has attached to "medical" factors.

A 1954 amendment introduced the concept of "disability" to the Act by preserving the insurance rights of individuals totally disabled prior to retirement. Disability was defined in pertinent part as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." P.L. 761 § 106(d), 68 Stat. 1052, 1080. Two years later Congress enacted disability insurance coverage, incorporating the 1954 definition of disability, P.L. 84–880 § 103(a), 70 Stat. 807, 815. The "vocational" factors, which plaintiff claims are at the heart of the congressional mandate, were not introduced into the statute, until Congress, following the Secretary's lead,[4] incorporated them into the 1968 amendments, which adopted the current definition of "disability." But the

Senate Report accompanying the 1968 amendments makes clear that, in response to overly generous judicial interpretations of the earlier definition of disability, the amendment was enacted to "provide guidelines to reemphasize the predominant importance of medical factors in the disability determination." (1967) U.S.Code, Cong. & Admin.News 2834, 2882.

Indeed, the Senate Report accompanying the 1968 amendments indicates that Congress intended to establish a separate severity test.

> The bill would provide that [a worker] *would be disabled only if it is shown that he has a severe medically determinable* physical or mental *impairment* or impairments; that if, despite his impairment or impairments, an individual still can do his previous work, he is not under a disability; *and* that if, considering the severity of his impairment together with his age, education, and experience, he has the ability to engage in some other type of substantial gainful work that exists in the national economy even though he can no longer do his previous work, he also is not under a disability....

*Id.* [*emphasis added*]. Therefore, the regulations, which incorporate and explicate the severity test, do not exceed the Secretary's statutory authority.[5] In light of the regulations' long history, *see* note 4 *supra,* and since they link "severity" to the effects of the impairment upon the work abilities of the claimant, they are neither capricious nor arbitrary.

The Court therefore must determine whether the ALJ's finding that plaintiff's impairments are not severe is supported by substantial evidence, 42 U.S.C. § 405(g),

---

4. Regulations promulgated in 1957 provided that—

> In determining whether an individual's impairment makes him unable to engage in [substantial gainful activity] primary consideration is given to the severity of his impairment. Consideration is also given to such other factors as the individual's education, training and work experience.

43 Fed.Reg. 9284, 9285 (March 7, 1978) [discussing the history of disability determinations].

5. Plaintiff contends that whenever a claimant shows that he has an impairment and cannot do his past work the burden of proof must shift to the Secretary and that therefore the severity test impermissibly interferes with the allocation of the burden of proof. But since the Court is satisfied that the statute authorizes the severity test, the burden shifts to the Secretary only when the plaintiff shows that "a severe impairment ... makes him unable to pursue his customary employment." *Anderson v. Schweiker,* 651 F.2d 306, 309 (5th Cir.1981).

that is, such evidence as a reasonable mind viewing the entire record could accept as adequate to support the conclusion drawn, *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 222 (1st Cir. 1981).

Under the regulations an impairment is severe if it *significantly* limits a claimant's physical or mental ability to do basic work activities. "The term significant means [*inter alia* ] 'having a meaning,' 'deserving to be considered,' and 'having or likely to have an influence or effect,' as opposed to 'meaningless.'" *Shaw v. Heckler,* No. 83–0045–B, at 7 (D.Me. October 7, 1983) [unpublished Order], quoting *Webster's Third New International Dictionary* (Merriam Co.1976) (unabridged).

The history of the regulation indicates that the Secretary intended a broad reading of "significant." The "not severe" regulation was promulgated in 1978 to clarify, without substantive change, the earlier rule that "slight" impairments were never disabling.

The definition, 'A medically determinable impairment is not severe if it does not significantly limit an individual's physical or mental capacity to perform basic work-related functions' is a clarification of the previous regulations (sic) terms 'a slight neurosis, slight impairment of sight or hearing, or other slight abnormality or a combination of slight abnormalities.' Both have a negative sense and are related to the requirement of the law that, for impairments to be disabling, they must be 'of such severity' as to prevent the claimant from doing previous work and, considering age, education and work experience, prevent the individual from engaging in any kind of substantial gainful work which exists in the national economy. The discussion on pages 9296 and 9297 of the NPRM shows that there is no intention to alter the levels of severity for a finding of disabled or not disabled on the basis of medical considerations alone, or on the basis of medical and vocational considerations. Negative phrasing of this concept is more useful in evaluating disability than affirmative terms would be.

43 Fed.Reg. 55349, 55357–58 (November 28, 1978) [announcing "final rules"].[6]

In the "disability" context, a reduced ability to do work activities "has a meaning," ('influence,' or 'effect'), if (in view of vocational factors) it may render the individual unable to work. Thus an impairment is not severe if it has "such a minimal effect on the individual['s ability to do basic work activities] that [it] would not be expected to interfere with his ability to do [most] work, irrespective of his age, education and work experience." 43 Fed.Reg. at 9296.

Plaintiff has impaired vision, but there is virtually no evidence that his vision, correctable to 20/20 in his left eye and to 20/200 in his right eye, affects his ability to do most work. And since plaintiff testified that he drives a car [Tr. 54], hunts [Tr. 47] and, with some difficulty, reads [Tr. 41–42], the record amply supports the finding that the effects of his visual impairment are not significant.

---

**6.** Similarly, the Notice of Proposed Rule Making referred to the severity test as a "technical clarification," 43 Fed.Reg. 9284, 9287 (March 7, 1978), and made clear that no substantive change was intended:

Several commenters suggested that the proposed amendments were drafted in response to 'short falls' in the trust fund reserves and represent an effort by the Social Security Administration to conserve the trust fund. There has been a great deal of concern and attendant publicity about the depletion of the social security trust funds and efforts to deal with that problem. These proposed regulations, however, are in no way related to those efforts and concerns. As explained in greater detail elsewhere in this preamble, the proposed regulations are intended as a consolidation and elaboration of long-standing medical-vocational evaluation policies. Since the purpose of the proposed regulations is not to increase nor decrease the allowance/denial ratio, it is anticipated that their publication would virtually have no effect on the trust funds.

*Id.* at 9295.

A report submitted by a Dr. Gratwick provides the requisite medical evidence of plaintiff's physical maladies. Although the problems are many, their significance is doubtful. Dr. Gratwick initially concluded that despite his impairments plaintiff had a reasonable capacity for sedentary, light and medium work. After reviewing certain test results Dr. Gratwick expressed his "suspicion ... that eventually [plaintiff] will be able to do [heavy work with prolonged lifting] as well." [Tr. 143.] Although this statement is ambiguous, it supports the inference that plaintiff is able to perform a full range of work activities. And plaintiff's activities, which include hunting [Tr. 47], fishing [Tr. 47], gardening daily [Tr. 56], and using a chain saw to cut firewood [Tr. 47, 138], and the facts that he takes no medication [7] [Tr. 54] and has no trouble sleeping [Tr. 54], also indicate that his physical impairments are not "severe."

Plaintiff testified that poor stamina requires that he rest frequently. [Tr. 46, 47.] But Dr. Gratwick could find no medical explanation. [Tr. 141.] And the record, which indicates that plaintiff may malinger,[8] amply supports the conclusion that any reduction in stamina is insignificant.

Plaintiff contends that he suffers a severe mental or emotional impairment. He and his wife testified that he has a poor memory and occasionally becomes disoriented or frustrated. Dr. Bruce T. Saunders, a psychologist, evaluated plaintiff and opined that plaintiff was not employable due to poor long- and short-term memory and a tendency to become disoriented [Tr. 28, 156]. He testified that plaintiff would need "constant supervision like a two year old." [Tr. 28.] But on this point Dr. Saunders virtually impeached himself. Although plaintiff took unusually long to complete certain I.Q. tests, the "testing itself [was] really very clean" [Tr. 32] and established that plaintiff's "intellectual capacity is there." [Tr. 28.] Indeed, Dr. Saunders concluded that objectively viewed "there [is] absolutely nothing wrong with this fellow ...," [Tr. 32] and that plaintiff is not "someone ... appropriately diagnosed by a psychologist other than to say that this is not an emotional problem" [Tr. 27]. Dr. Saunders thought plaintiff might be suffering from organic brain damage and recommended a neurological evaluation. [Tr. 29, 32.]

Dr. Carl Irwin, the medical expert and a certified specialist in neurological surgery, testified, on the basis of medical reports and the hearing testimony of Dr. Saunders and plaintiff, that plaintiff's impairments do not significantly affect his ability to do basic work activities and that no additional examination or study was "essential to the completion of the medical record." [Tr. 64–65.] Dr. Irwin noted no disturbance in plaintiff's speech patterns and no vocabular interference. [Tr. 68.] He concluded that plaintiff's detailed and accurate recitation of his medical history contraindicated Dr. Saunders' conclusion that plaintiff's memory is poor. Certainly it was within the province of the ALJ to accept Dr. Irwin's opinion over that of Dr. Saunders. *Lizotte v. Secretary of Health and Human Services,* 654 F.2d 127, 130 (1st Cir. 1981). *See Rodriguez v. Secretary of Health and Human Services,* 647 F.2d at 222.

The record fully warrants the conclusion that plaintiff's impairments have such a minimal effect on plaintiff's ability to perform work activities that they could not be expected to interfere with his ability to do most work, irrespective of his age, educa-

---

7. Dr. Ronald Soucie, a chiropractor, did report that plaintiff requires monthly chiropractic manipulations due to pain caused by "chronic subluxation of C–2 and C–6." [Tr. 147.] But since the manipulations provide relief [Tr. 147], the subluxation does not contraindicate the ALJ's findings of nonseverity.

8. Plaintiff testified,

I usually never took a job or worked at a job that I didn't care about, I tried one time instead of drawing unemployment working in a shoe shop. And that just about drove me right up a tree. I just couldn't stand the noise. The machines clitter clattering banging all the time and I just asked the foreman if he'd lay me off.
[Tr. 56.]

tion, and work experience. The ALJ's conclusion that plaintiff's impairments, considered individually or collectively, are not severe is supported by substantial evidence.[9]

Accordingly, it is ORDERED that the Secretary's motion for summary judgment is GRANTED and that judgment be entered AFFIRMING the decision of the Secretary.

SO ORDERED.

9. There is no indication that plaintiff's "medically undocumented history of alcohol abuse" interferes with his ability to work. Plaintiff testified that he has cut his consumption of alcohol from a six-pack of beer and a half-pint of whiskey a day to between one and two six-packs a week. [Tr. 61.]