Robert **HUNDRIESER**, Plaintiff,

v.

Margaret M. **HECKLER**, Secretary of Health and Human Services, Defendant.

No. 83 C 4360.

United States District Court, N.D. Illinois, E.D.

March 19, 1984.

---

1232

Deborah Spector, Chicago, Ill., for plaintiff.

Thomas P. Walsh, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This is an action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision

of the Secretary of the Department of Health and Human Services (Secretary) denying plaintiff's application for an open-ended period of disability and disability insurance benefits, 42 U.S.C. §§ 416(i), 423. The parties have filed cross motions for summary judgment; the Secretary urges affirmance of the denial of a continuing term of benefits and plaintiff seeks an award of his full claim. The Secretary's finding that plaintiff's disability lasted for just over one year and ceased as of May 31, 1982 is reversed as contrary to the applicable law and as unsupported by substantial evidence.

## I.

The plaintiff is 58 years old (R. 88). He has an eighth-grade education with two additional years of vocational training (R. 36). For twenty-eight years, until May 7, 1981, plaintiff was employed as a maintenance mechanic (R. 28). His work required extensive standing, walking, lifting, squatting, kneeling, and crawling (R. 26–27) and qualifies as "heavy" under the applicable regulations (R. 59). *See* 20 C.F.R. § 404.-1567(d).

Plaintiff has been diagnosed as having, among other things, a variety of knee problems (R. 147, 157), hypertension (R. 146, 158), degenerative disc disease (R. 176) and bilateral carpal tunnel syndrome (attachment to brief of plaintiff). The worsening condition of plaintiff's left knee caused him to quit his job on May 7, 1981, and to have a left tibial osteotomy three days later (R. 129–145). Plaintiff has not worked since the operation (R. 13) and his knee condition has continued to place limits on his ability to do certain activities such as standing (R. 127), walking (R. 39, 42), climbing (R. 42–43) and kneeling (R. 41). The longer plaintiff sits the harder it is for him to mobilize his left leg upon rising (R. 40, 54–55). He uses a cane when erect (R. 127). Plaintiff also complains of severe, incapacitating headaches (R. 37, 44–45), pains in his neck

and lower back (R. 37–38, 45), vision limitations (R. 38–39), and problems with his grip (R. 39).

While the administrative law judge (ALJ) never expressly found that plaintiff could not do his past work, that he held such a conclusion seems apparent from the record. In fact, from the questions he posed to the vocational expert it appears the ALJ believed that plaintiff is capable of only sedentary work (R. 191). The vocational expert called by the Secretary also determined that plaintiff could not do his past work (R. 69). This expert concluded that in light of plaintiff's age, education, vocational background and physical limitations the number of jobs which plaintiff can fill cannot be considered to exist in significant numbers (R. 188–192).

Even though (1) plaintiff is not working, (2) he has medically-diagnosed physical limitations which prevented him from doing his past work, and (3) there are no jobs in significant numbers which he can fill because of these limitations in light of his age, vocational background and education, the ALJ found that plaintiff's disability ceased as of the end of May 1982 (R. 13–14). The rationale for his decision was that plaintiff's impairments were not "severe" [20 C.F.R. § 404.1520(c)] because they did not significantly limit his ability to perform basic work-related functions [20 C.F.R. § 404.1521] (R. 13).

## II.

In 1978 the Secretary prescribed five sequential tests for determining whether a claimant is disabled. *See* 43 Fed.Reg. 55349, *codified as amended*, 20 C.F.R. § 404.1520.[1] A finding of disabled or not disabled at any point in the review process is conclusive and terminates the analysis, 20 C.F.R. § 404.1520(a). First, a claimant who is currently working is presumptively not disabled, 20 C.F.R. § 404.1520(b). Second, a claimant whose impairments are not "severe" is not disabled, 20 C.F.R. § 1404.-

---

1. The regulations in part 404 of 20 C.F.R. govern disability claims by applicants insured under the Social Security system. The regulations in part 416 of 20 C.F.R. govern claims by uninsured applicants who are seeking SSI disability benefits. The two parts are very similar.

1520(c). Third, a claimant whose impairments meet or equal an impairment listed in Appendix 1 of the regulations (the listed impairments) is presumptively disabled, 20 C.F.R. § 404.1520(d). Fourth, a claimant whose impairments are severe but don't meet Appendix 1 levels is not disabled if his "residual functional capacity" permits him to do his past work, 20 C.F.R. § 404.-1520(e). Fifth, a claimant with severe but not listed impairments who is unable to do his past work is disabled if he cannot do other work in light of his age, education and past work experience, 20 C.F.R. § 404.-1520(f). *See generally Chico v. Schweiker*, 710 F.2d 947, 950–52 (2nd Cir.1983). In order to calculate a claimant's ability to do past work the Secretary generally uses a system of medical/vocational guidelines set out in Appendix 2 of the regulations. *See generally Heckler v. Campbell*, —— U.S. ——, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

Plaintiff was found not disabled at the second stage of the disability determination process when the ALJ found that he no longer suffered from a "severe impairment". The regulations define at length what the Secretary means by an impairment that is not severe:

(a) *Non-severe impairment.* An impairment is not severe if it does not significantly limit your physical or mental abilities to do basic work activities.

(b) *Basic work activities.* When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include—

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, coworkers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521.

The interesting aspect of this case stems from the fact that the record as it now stands provides strong support for a finding that plaintiff is disabled, had the ALJ continued his review through all five steps. Assuming that plaintiff's limitations do not meet or equal the listed impairments of Appendix 1 (step 3), it is evident that his residual functional capacity does not permit him to do his past work, thereby meeting the fourth test. The Secretary's own vocational expert, in response to the ALJ's interrogatories, stated that given plaintiff's physical limitations, as well as his age, education and work experience, jobs which he could presently fill do not exist in significant numbers. Consequently, plaintiff appears disabled under step 5, since he is unable to do "other work". 20 C.F.R. § 404.1520(f)(1). *See also* 20 C.F.R. § 404.-1566(d) ("work exists ... [only] when there is a significant number of jobs having requirements which you are able to meet ....")

Were this simply a case of an internally inconsistent set of regulations the seeming paradox presented by a claimant unable to do any work in large part because of clearly diagnosed physical limitations being found not disabled because his impairments do not "significantly limit [his] physical ... ability to do basic work activities," 20 C.F.R. § 404.1521(a), would not detain this court. Plaintiff, however, argues that this paradox reflects a fundamental and fatal inconsistency between the severe impairment requirement of 20 C.F.R. § 404.-1520(c) and the definition of disability in the underlying statute. His position, in essence, is that the Secretary's use of medical evidence alone to find that the physical limitations which prevent a claimant from doing his past work are not "severe" and hence not disabling contravenes Congress' intention that the Secretary consider the claimant's age, education and vocational experience whenever a review of the medical

evidence alone does not lead to a finding of disability. It is to that question we turn.

### III.

#### 1. *Statutory Language*

The basic statutory definition of disability has remained essentially unchanged since the creation of the "disability freeze" by the Social Security amendments of 1954, P.L. 83–761, and of the full-fledged disability insurance program in 1956, P.L. 84–880. The current provision reads:

> (1) The term "disability" means—
>
> (a) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(1)(A).

■ This definition invites attention to both the medical condition and functional capabilities of claimant. The construction of the provision is such that the condition of disability is defined as an "inability to engage in any substantial gainful activity," which is established at present by reference to the claimant's age, education and work experience. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1571. The language *"by reason of* any medical determinable physical or mental impairment" (emphasis added) is a clause limiting entitlement to claimants who can demonstrate a medically-determinable basis for their inability to work.

■ Nothing in this basic statutory definition of disability suggests that claimants have to prove that they suffer from a "severe" impairment in order to qualify as disabled. Rather, the statute speaks broadly of "any" impairment. Regulations requiring claimants to show that they suffer from some medically determinable impairment would appear to be logically consistent with the construction of the statute. A practice, however, of denying disability benefits to claimants like plaintiff whose ability to work is markedly restricted due to diagnosed physical or mental abnormalities because these impairments are deemed not "severe" baldly contravenes the language and structure of 42 U.S.C. § 423(d)(1)(A).

Our analysis does not end here, however, because in 1967 Congress, in response to the rising costs of the Social Security program and the more extreme judicial expansions of eligibility, amended the Social Security Act to provide guidelines for the determination of disability. *See* Senate Report 744, 90th Cong., 1st Sess., 46–50, *reprinted in* 1967 U.S.Code Cong. and Ad. News, 2834, 2880–83. The statutory elaboration of the definition of disability reads:

> An individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work ....

42 U.S.C. § 423(d)(2)(A).

This provision supports plaintiff's position on two counts. First, while the section speaks of the "severity" of a claimant's impairments it quite clearly defines the requisite level of severity by reference to the claimant's present ability to do work. In fact, Congress made no mention of severity when it included a definition of "impairment" as another of the 1967 amendments:

> For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques.

42 U.S.C. § 423(d)(3).

Second, the supplemental definition of disability itself mandates consideration of

the non-medical characteristics of the claimant. The language of the provision establishes in essence that an impairment is disabling where claimant is "not only unable to do his previous work but cannot, *considering his age, education, and work experience,* engage in any other kind of substantial gainful work ...." 42 U.S.C. § 423(d)(2)(A) (emphasis added).

A regulation requiring claimants to have medically-demonstrable physical or mental abnormalities and to be unable to do their past work would be harmonious with the 1967 amendments. Nothing in these amendments suggests, however, that claimants with medically demonstrable abnormalities who are unable to do their past work can be found not disabled prior to consideration of their age, education and work experience simply because their impairments do not meet a requisite level of severity. The relevant statutory language indicates that in the typical disability case the severity of the claimant's impairments is not an independent variable which can alone serve as the basis for a finding of not disabled. Rather, impairments are to be established as disabling by reference to the claimant's present ability to do work in light of both his medical condition and non-medical characteristics.

It is instructive to contrast the statutory emphasis on non-medical factors in the usual disability case with the narrow focus on medical factors in the determination of disability for other classes of claimants:

> A widow, surviving divorced wife, widower, or surviving divorced husband shall not be determined to be under a disability ... unless his or her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity.

42 U.S.C. § 423(d)(2). In this provision Congress defined the requisite level of severity by reference to regulations and not to the present functional abilities of the individual claimant. The test of disability is not whether the particular claimant is able to work but rather whether "an individual" could engage in gainful activity while having the claimant's impairments. According to the legislative history the test for disability outlined in this provision was intended to be "more restrictive than that for disabled workers and childhood disability beneficiaries". Senate Report, *supra.* 1967 U.S.Code Cong. & Ad.News at 2883. Unlike the test applicable to plaintiff "the determination of disability [is] based solely on the level of severity of the impairments". *Id.*

The existence of two distinct methods for determining disability and the differences between them strongly counsel against interpreting 42 U.S.C. § 423(d)(2)(A) as permitting the Secretary to rely on medical evidence alone and deny disability benefits to individuals unable to do past work on the ground that their impairments are not "severe". Congress developed two distinct methods for making disability determinations for a specific reason. The more restrictive approach, § 423(d)(2)(B), which places emphasis on the level of impairment severity, is clearly designed to restrict entitlement and was given limited application to several specific classes of claimants. The more expansive test of disability, § 423(d)(2)(A), which relies substantially on the consideration of the non-medical characteristics of each claimant, was designed to apply to most claimants, including the plaintiff.

### 2. *Legislative History*

The legislative history of the 1967 amendments does not provide unqualified support for this interpretation of the statutory definition of disability, but it is at worst compatible with this approach. The Senate Report describes the amendment as providing "guidelines to reemphasize the predominant importance of medical factors in the disability determination". Senate Report, *supra,* U.S.Code Cong. and Ad. News at 2882. This statement appears to embody an understanding that in most cases the decision that an individual is dis-

abled can be based on the existence of impairments presumptively disabling. *Id.* at 2883.

The Senate Report also contains a provision which is sometimes cited in support of the validity of the severe impairment requirement of 20 C.F.R. § 404.1520(c). This passage reads:

> The original provision was designed to provide disability insurance benefits to workers who are so severely disabled that they are unable to engage in any substantial gainful activity. The [amendment] would provide that such an individual would be disabled only if it is shown that he has severe medically determinable physical or mental impairment or impairments; that if, despite his impairment or impairments, an individual still can do his previous work, he is not under a disability; and that if, considering the severity of his impairment together with his age, education, and experience, he has the ability to engage in some other type of substantial gainful work that exists in the national economy even though he can no longer do his previous work, he is also not under a disability ....

Senate Report, *supra,* U.S.Code Cong. and Ad.News at 2882.

This language alone is not enough to support the Secretary's application of 20 C.F.R. § 404.1520(c) in this case. First, later in the same page the report discusses the nature of the impairment which is the basis for disability and makes no mention of a discrete "severity requirement". *Id.* at 2882. Second, the report contrasts the usual method of determining disability with the "more restrictive" approach of 42 U.S.C. § 423(d)(2)(B), where the determination is "based solely on the level of severity of the impairment". *Id.* at 2883. Finally, the passage is little more than a summary of statutory provisions, albeit one giving somewhat more emphasis to the existence of a "severe" impairment. While cautioning this court against hasty invalidation of 20 C.F.R. § 404.1520(c) this one somewhat ambiguous passage from the legislative history is not controlling. It is the lan-

guage of the statute that must guide this court and that language is fundamentally incompatible with the Secretary's expansive interpretation of 20 C.F.R. § 404.-1520(c).

### 3. *History of the Regulation*

In response to the 1967 amendments the Secretary promulgated amended regulations which provided in pertinent part:

> Whether or not an impairment in a particular case ... constitutes a disability ... is determined from all the facts of that case. Primary consideration is given to the severity of the individual's impairment. Consideration is also given other factors such as the individual's age, education, and work experience. Medical considerations alone can justify a finding that the individual was not under disability where the only impairment is a slight neuroses, slight impairment of sight or hearing, or other slight abnormality or combination of abnormalities ....

20 C.F.R. § 404.1502(a) (1968) (emphasis added).

The present five-step scheme for determining disability was proposed by the Secretary in 1978. 43 Fed.Reg. 9284 *et seq.* (March 7, 1978). The proposed regulations were simply "intended as a consolidation and elaboration of long-standing medical-vocational evaluation policies". *Id.* at 9295. Their purpose was "not to increase nor decrease the allowance/denial ratio ...," *id.,* but simply to improve "program efficiency ... by limiting the number of cases in which it would be necessary to follow the vocational evaluations sequence ...." 45 Fed.Reg. 55574 (August 20, 1980).

Immediately prior to discussing the purpose of the severe impairment requirement of 20 C.F.R. § 404.1520(c) the Secretary outlined a three-part classification of impairments for purposes of the disability determination process:

> There are, of course, various levels of impairment severity. On the basis of the statutory provisions, existing regulations provide that medical considerations alone

can justify a finding of disabled (absent rebutting evidence) where the requisite duration requirement is met and the impairment is listed in the appendix to the regulations or is medically the equivalent of the listed impairment. This, in effect, represents the upper range of impairment severity. Conversely, *there is a point in the range of impairment severity below which the effects of the impairment have such a minimal effect on the individual that they would not be expected to interfere with his or her ability to work irrespective of his or her age, education, and work experience.* 43 Fed.Reg. at 9296 (emphasis added). The effect of the last sentence of this passage is that an impairment is presumptively nondisabling only when no person who suffers from that impairment would be found disabled.

In light of this classification of impairments the Secretary's discussion of 20 C.F.R. § 404.1520(c) makes clear her understanding that the severe impairment requirement is to be used to support a finding of not disabled only in those instances where the impairment in question is presumptively not disabling:

> Introducing the term "not severe" in the proposed amendment and the word "severe" when describing the proposed amendments was not intended to alter the levels of severity for a finding of disabled or not disabled on the basis of medical considerations alone, or on the basis of medical and vocational considerations. Rather, it was intended only to clarify the circumstances under which the finding of not disabled would be justified on the basis of medical considerations alone.

43 Fed.Reg. 9296–97.

The Secretary's announcement of the adoption of the new regulatory scheme further emphasized that 20 C.F.R. § 404.1520(c) was but a clarification of the terms "a slight neuroses, slight impairment of sight or hearing, or other slight abnormality" and professes "no intention to alter the levels of severity for a finding of disabled or not disabled". 43 Fed.Reg. 55358 (November 28, 1978). In sum, the administrative history of 20 C.F.R. § 404.1520(c) indicates quite vividly that it was no more than a restatement of existing regulations and was intended to apply only to that narrow set of cases where claimant's impairment is so minor that no person who suffers from the impairment could be found disabled. *Brady v. Heckler,* 724 F.2d 914, 919–20 (11th Cir.1984) (*per curiam* ); *Chico, supra,* 710 F.2d at 954, n. 10; *Trafton v. Heckler,* 575 F.Supp. 742, 745 (D.Me.1983).

There is no support in this history for a proposition that 20 C.F.R. § 404.1520(c) permits the Secretary to rely on medical evidence alone to deny disability benefits to claimants whose impairments prevented them from doing their past work and severely restricted their ability to do other jobs. In other words, it appears that the Secretary intended 20 C.F.R. § 404.1520(c) to be a *de minimus* requirement and that the bulk of disability terminations would continue to be done through reference to the listed impairments of Appendix 1 or through consideration of the claimant's age, education and work experience, as well as consideration of the effects of the claimant's mental and physical abnormalities. *See* 43 Fed.Reg. 55351 ("The regulations emphasize that the adjudicative judgment is to be based on consideration of all the individual factors.")

### 4. *Burden of Proof*

The rules governing the allocation of the burden of proof in the disability cases are well established and appear to be uniform for relevant purposes in every federal circuit. These rules have not been established by regulation but have instead been implied by the courts from the statutory provisions defining disability. *See e.g., Meneses v. Secretary of Health, Education and Welfare,* 442 F.2d 803 (D.C.Cir. 1971). The claimant carries both the ultimate burden of persuasion as well as the initial burden of going forward with the evidence. He satisfies the burden of going forward and makes a *prima facie* case of

disability upon demonstrating that his impairments render him unable to do his past work. At that point the burden of going forward shifts to the Secretary to establish the availability of some other form of substantial gainful activity which the claimant remains capable of performing. *See generally Meneses, supra, Stark v. Weinberger,* 497 F.2d 1092, 1097–98 (7th Cir.1974).

■ There appear to be two possible effects of the expansive interpretation of 20 C.F.R. § 404.1520(c) advanced by the Secretary on this allocation of the burden of proof. First, it could directly raise the burden of proof faced by every claimant. This case is illustrative. It is undisputed that plaintiff could not do his past work due to his physical limitations. Thus, he made out a *prima facie* case under the existing burden of proof rules. The Secretary's own vocational expert testified that there were no jobs in significant numbers which a plaintiff could fill, suggesting that the Secretary would not have met its burden had it been put to the test. Yet, by finding that the plaintiff's impairment was not "severe" and hence non-disabling the Secretary in effect imposed a substantial additional requirement which claimants must meet before making out a *prima facie* case: proof of impairment severity. The second approach, one adopted by several courts, is to treat the severity requirement of 20 C.F.R. § 404.1520(c) as a threshold test and to limit the application of the traditional burden of proof rules to the later steps in a disability determination process where the claimant's present work capabilities, age, education and vocational experience are considered. *See e.g., Goodermote v. Secretary of Health & Human Services,* 690 F.2d 5, 6–7 (1st Cir.1982) Neither of the changes in the burden of proof rules which could be wrought by the expansive interpretation of 20 C.F.R. § 404.1520(c) are acceptable.

There has been no change in the statutory definition of disability to support a substantial increase in the burden which claimants must meet in order to make out a *prima facie* case. As this case illustrates,

requiring claimants unable to do their past work due to "an impairment" to prove in addition that their impairment is "severe" has the effect of significantly restricting entitlement. While we must give substantial deference to the Secretary, a fundamental change in the standards of entitlement falls outside of permissible boundaries of administrative action, absent some expression of congressional assent.

Treating an expansively interpreted 20 C.F.R. § 404.1520(c) as a mere threshold requirement has its own problems. There is no statutory support for this approach. As this case illustrates, the so-called "threshhold" would in practice be higher than the very standard for establishing a disability. Claimants like the plaintiff, who are unable to do their past work, would have to first prove that they suffer from a "severe impairment". Having done so they would then have only to show that they suffer from "an impairment" in order to make out a *prima facie* case. The use of 20 C.F.R. § 404.1520(c) as a threshold test, then, is little more than a way of increasing plaintiff's burden in making out a *prima facie* case and is consequently impermissible. *Cf. Chico, supra,* 710 F.2d at 954–55.

### IV.

■ Those attacking the Secretary's regulations must make out a strong case of inconsistency with the statute if they are to succeed. *McCoy v. Schweiker,* 683 F.2d 1138, 1143–1144 (8th Cir.1982) (*en banc*). Congress has given the Secretary substantial authority to promulgate a wide variety of rules and regulations;

> The Secretary shall have full power and authority to make rules and regulations and to establish procedures not inconsistent with the provisions of this subchapter which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits thereunder.

42 U.S.C. § 405(a). The Supreme Court has emphasized on several occasions that the Secretary has broad authority to prescribe regulations. It has stressed that these regulations are entitled to more than mere deference or weight by the courts but instead are to be given legislative effect and should not be overturned unless they are arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. *See Heckler v. Campbell,* — U.S. —, 103 S.Ct. 1952, 1957, 76 L.Ed.2d 66 (1983).

In light of this presumption of validity the reception given 20 C.F.R. § 404.1520(c) by the courts of appeals has been tellingly lukewarm. *Chapman v. Schweiker,* 81–1025 (10th Cir. Feb. 26, 1982) and *Hilton v. Schweiker,* 81–1139 (10th Cir. Feb. 26, 1982) did sustain the validity of the regulation but the decisions were by a divided panel and were later withdrawn and remanded to the District Court by the full court, after rehearing *en banc. Hilton v. Schweiker,* 81–1139, *supra* (January 10, 1983) (order); *Chapman v. Schweiker,* 81–1025, *supra* (January 10, 1983) (order). In *Lofton v. Schweiker,* 653 F.2d 215 (5th Cir.), *cert. denied,* 454 U.S. 1089, 102 S.Ct. 651, 70 L.Ed.2d 626 (1981) and *Wallschlaeger v. Schweiker,* 705 F.2d 191 (7th Cir. 1983), the courts simply assumed the validity of the severity requirement. *McCoy v. Schweiker,* 683 F.2d 1138 (8th Cir.1982) (*en banc*) dealt only with the validity of the appendix to medical-vocational guidelines. While upholding the validity of the five-step disability determination scheme, the court in *Goodermote v. Secretary of Health & Human Services,* 690 F.2d 5, 7 (1st Cir.1982), expressly noted that claimant had not challenged the validity of 20 C.F.R. § 404.1520(c).

Other courts of appeals have cast doubt upon the facial validity of the severe impairment requirement, yet hesitated to make a definitive ruling. Judge Friendly discussed at length the "close question" presented by the "seeming conflict" between the severity requirement and the statutory definition of disability but declined to rule on the matter in *Chico v. Schweiker,* 710 F.2d 947 (2d Cir.1983). Similarly, the court in *Delgado v. Heckler,* 722 F.2d 570 (9th Cir.1983), declined to consider the "very troubling contention" that the severe impairment requirement contravenes the statutory definition of disability. *See also, Scruggs v. Schweiker,* 559 F.Supp. 100 (D.Tenn.1982) (20 C.F.R. § 404.1520(c) deemed invalid). Another court of appeals has given a narrow reading to 20 C.F.R. § 404.1520(c). *Brady v. Heckler,* 724 F.2d 914 (11th Cir.1984).

By interpreting 20 C.F.R. § 404.-1520(c) narrowly and in a manner designed to ensure consistency with both the statutory definition of disability and existing case law it appears to this court quite possible to sidestep the question of the facial invalidity of the severe impairment requirement. Regulations promulgated pursuant to the Social Security Act must be construed to carry out the clear intent of statutory language. *Giacone v. Schweiker,* 656 F.2d 1238, 1242 (7th Cir.1981).

The regulations describe a "severe" impairment as one which "significantly" limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), .1521(a). The regulations do not define "significant" but the ordinary usage of the word suggests that the requirement of significance is not a particularly high one. Webster's defines "significant" as "having a meaning," "deserving to be considered," and "having or likely to have an influence or effect." Webster's Third International Dictionary (Merriam Co. 1976) (Unabridged). The antonym of "significant" is "meaningless." A significant limit on a claimant's ability to do basic work activities, then, is thus no more than one which is "not meaningless." *See Trafton v. Heckler,* 575 F.Supp. 742, 745 (D.Me.1983). *Jones v. Schweiker,* 551 F.Supp. 205, 208 (D.Md.1982). That the existence of a severe impairment is to be determined by reference to the claimant's ability to do basic work activities indicates that in most cases severity "is to be determined by whether the impairment in fact precludes substantial gainful activity, not by measurements 'on an imaginary scale with calibrations ranging from "mild" to

"severe." ' " *Doe v. Harris,* 495 F.Supp. 1161, 1168 (S.D.N.Y.1980) *quoting from Ber v. Celebrezze,* 332 F.2d 293, 298–99 (2d Cir.1964). *See also Jones v. Schweiker, supra,* 551 F.Supp. at 208. ("ALJ erred in viewing severity of impairment solely as a medical issue ... rather than adhering to the regulatory scheme, in which severity is defined in terms of significant functional limitation.")

■ As noted above, when proposing the present regulations the Secretary outlined a classification of impairments for purposes of making disability determinations and an interpretation of the severity requirement, both of which this court adopts as consistent with statutory requirements. The Secretary divided impairments into three categories: those that were presumptively disabling, those that were presumptively not disabling, and those whose disabling effects had to be weighed in conjunction with the age, education, and vocational background of the claimant. It is apparent from the Secretary's discussion that the severity requirement was intended to permit a determination of non-disability to be made on the basis of medical evidence alone only when the claimant's impairment was so slight that no person who suffered from it would be disabled.

■ Consistent with the ordinary usage of the term "significant," the Secretary explicitly equated the "non-severe" impairment requirement of the proposed regulations with the existing requirement that a claimant's impairment be more than "slight." Other courts have similarly tailored 20 C.F.R. § 404.1520(c). *See e.g., Brady, supra,* 724 F.2d at 919–20; *Moore v. Heckler,* 575 F.Supp. 180 (D.Me.1983). *See also Chico v. Schweiker,* 710 F.2d 947, 954 n. 10 (2d Cir.1983). A non-severe impairment, then, is one that is presumptively not disabling because regardless of age, education and vocational background any claimant who has the impairment retains the ability to do his past work.

■ In the typical disability case the parties in effect assume the existence of a severe impairment and their dispute centers on whether the claimant can do his past work and, if not, whether he is capable of other work. *Lofton v. Schweiker,* 653 F.2d 215, 217 (5th Cir.1981). Properly applied, 20 C.F.R. § 404.1520(c) is a threshold test invoked at the option of the Secretary. It is, however, a test which the Secretary and not the claimant must meet. If the Secretary elects to challenge claimant's entitlement to disability because of the absence of a severe impairment, the Secretary, with her superior access to the medical literature and experience with effects of various impairments on functional capabilities, should have the burden of showing that the claimant's impairments are presumptively nondisabling. This burden of going forward, should the Secretary choose to assume it, would be light and consist of no more than showing that the claimant's impairments fall within the category of those presumptively non-disabling. Consistent with the present well-established burden of proof rules, the claimant can then rebut the Secretary's case by showing that his impairments prevent him from doing his past work. In other words, by making out a *prima facie* case of disability through showing an inability to do past work due to "an impairment" the claimant necessarily satisfies the "severe impairment" requirement of 20 C.F.R. § 404.-1520(c). *See Clemente v. Schweiker,* 564 F.Supp. 271, 273 (S.D.N.Y.1983); *Roberts v. Heckler,* 564 F.Supp. 572, 574 (D.N.D. 1983).

This court's construction of 20 C.F.R. § 404.1520(c) is consistent with both the structure of entitlement and the burden of proof rules derived from the statute. It allows the Secretary to realize the efficiency gains promised by 20 C.F.R. § 404.-1520(c) while protecting claimants from a statutorily unwarranted increase in the burden of making a *prima facie* case of disability. Far from imposing an alien interpretation of the severity requirement on the Secretary the court's treatment follows the Secretary's own discussion of the purpose and effect of 20 C.F.R. § 404.1520(c). Case law also supports our approach. In *Wallschlaeger v. Schweiker,* 705 F.2d 191 (7th Cir.1983), for example, the 7th Circuit relied upon 20 C.F.R. § 404.1520(c) when

affirming a denial of disability benefits. Judge Posner noted at several points in the opinion that the claimant retained her ability to do her past work. Under this court's construction of § 404.1520(c) the *Wallschlaeger* claimant would also be found not disabled since by not demonstrating an inability to do past work due to a mental or physical abnormality she failed to rebut the Secretary's showing of no severe impairment.

Judge Posner's discussion of the relationship between the severe impairment requirement of § 404.1520(c) and the statutory definition of disability supports this court's view of the requirement as limited in scope and satisfied by the claimant who makes out *prima facie* case:

> If you do not have a severe impairment [under the regulations] you are not disabled even if you have some slight impairment that disables you from performing any work which you have or are qualified to do. But in a practical sense an impairment that prevents an applicant from doing any work he is qualified to do is a severe impairment, for by hypothesis it is totally disabling, and the statute itself—42 U.S.C. § 423(d)(2)(A) again—defines "severe" in just that practical way.

*Id.* at 197. In most other cases where the courts have relied upon 20 C.F.R. § 404.-1520(c) to affirm a denial of disability, the claimants were found able to do his past work or their impairments presumptively had no effect on their ability to work regardless of their age, education and work experience. *See e.g. Goodermote v. Secretary of Health & Human Services,* 690 F.2d 5 (1st Cir.1982); *Moore v. Heckler,* 575 F.Supp. 180 (D.Me.1983). *But see Anderson v. Schweiker,* 558 F.Supp. 654 (D.S. D.1983). Conversely, a claimant's inability to do their past work is usually an important factor in a court's decision that there was no substantial evidence to support a finding that the claimant did not suffer from a severe impairment. *See e.g., Clemente, supra,* 564 F.Supp. at 272–73; *Lucena v. Secretary of Health and Human Services,* 572 F.Supp. 130, 133 (D.P.R. 1983).

## V.

In this case the Secretary relied upon an over-broad interpretation of the severe impairment requirement. The record in its present state leaves little doubt that plaintiff's physical limitations prevented him from doing his past work. Had he had an opportunity to demonstrate this fact, and had he done so, plaintiff would have not only satisfied 20 C.F.R. § 404.1520(c) but also made out a prima facie case of disability. Remand of this case to the Secretary is appropriate. Plaintiff is entitled to the opportunity to make good on his seemingly meritorious claim of an inability do past work due to a medically-demonstrable physical impairment. If he does so, he has made out a *prima facie* case and the burden shifts to the Secretary to demonstrate that plaintiff remains capable of filling jobs which exist in significant numbers in the national economy.

## VI.

An alternative ground for remand is the absence of support for the Secretary's conclusion that plaintiff did not suffer from a severe impairment. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). *See McNeil v. Califano,* 614 F.2d 142, 145 (7th Cir.1980).

The record reveals that plaintiff's knee problems alone significantly limit his ability to do basic work activities. He is unable to walk for more than three blocks and must use a cane. Plaintiff has difficulty climbing stairs and getting in and out of vehicles. His condition presents him with a dilemma: the longer he sits the longer it takes to mobilize his leg once he rises; yet he must use a cane and ambulation appears to be difficult when erect. His ability to kneel, stoop and push and pull with his legs is restricted. Further, his complaints of severe pains in his head, back and neck were summarily discounted by the ALJ, without an adequate discussion of why he did not consider these complaints credible.

*See Szulyk v. Heckler,* 575 F.Supp. 1266, 1268 (N.D.Ill.1984) ("... to simply declare that plaintiff's complaints of pain were 'not entirely credible,' without further explanation, constitutes error on the part of the ALJ.") Finally, plaintiff testified that he has problems with his grip and has offered to this court medical evidence which supports the existence of tunnel carpal syndrome. Considered as a whole, the record indicates that plaintiff's physical limitations sufficiently compromise his ability to do basic work activities. The requisite level of impairment severity has been met.

### Conclusion

The cross motions for summary judgment are denied. This case is remanded to the Secretary for further proceedings consistent with this opinion. The Secretary is to take the next steps in the sequential evaluation mandated by the regulations.