Elmer HOLMES, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

Civ. No. 84–0055–B.

United States District Court, D. Maine.

Sept. 26, 1984.

William E. Macdonald, Limberis & Macdonald, Bangor, Maine, for plaintiff.

Timothy C. Woodcock, Asst. U.S. Atty., Bangor, Maine, for defendant.

## ORDER REMANDING ACTION TO THE SECRETARY

CYR, Chief Judge.

This action is brought under sections 205(g) and 1631(c)(3) of the Social Security Act [Act], 42 U.S.C. §§ 405(g) & 1383(c)(3), to review the final determination of the Secretary of Health and Human Services [Secretary] denying the plaintiff's application for Supplemental Security Income [SSI] and disability insurance benefits. Plaintiff filed an application for disability insurance benefits and for SSI benefits on October 7, 1982, alleging an inability to work since October 1979, at age 55. The applications were denied initially and upon reconsideration. A *de novo* hearing was held on June 14, 1983 before a Social Security Administration administrative law judge [ALJ], and on November 30, 1983 the ALJ found that plaintiff was not disabled within the meaning of the Act. On February 3, 1984 the ALJ's decision became the "final decision" of the Secretary upon its affirmance by the Appeals Council.

Plaintiff has exhausted his administrative remedies and moves for summary judgment. The Secretary has filed a motion for an order affirming her "final decision," and a certified copy of the transcript of the entire record of the proceedings relating to plaintiff's applications, including the testimony and documentary evidence upon which the decision of the ALJ and Appeals Council were based.

■ The Court has reviewed and considered the entire record, including the transcript of the administrative proceedings and the briefs submitted by the parties. In reviewing the Secretary's decision, the Court must determine whether the findings of the Secretary are supported by substantial evidence. *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1st Cir.1981). Substantial evidence exists where a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support the conclusion drawn. *Id.* In addition, the conclusion drawn at the administrative level must be supported by full and detailed findings. *Small v. Califano*, 565 F.2d 797, 801 (1st Cir.1977).

The uncontroverted medical evidence in the record reveals that plaintiff suffers from "mild" mental retardation and moderately advanced osteoarthritis of the lumbar spine, specifically at L4–5 and L5–S1, manifested by spur formation and early bridging, particularly at L4–5. The ALJ found that neither plaintiff's mental retardation, evidenced by an overall I.Q. rating of 64, nor his osteoarthritis, significantly limits plaintiff's ability to perform basic work-related activities. Therefore, plaintiff's impairments were determined not "severe." Tr. 12–13. Plaintiff contends not only that his impairments are "severe," but that they meet listing 12.05C of the Secretary's listing of impairments.[1]

This Court consistently has held that an impairment is not "severe" if it has " 'such

---

1. Listing 12.05 reads:

12.05 *Mental retardation.* As manifested by:

A. Severe mental and social incapacity as evidenced by marked dependence upon others for personal needs (e.g., bathing, washing, dressing, etc.) and inability to understand the spoken word and inability to avoid physical danger (fire, cars, etc.) and inability to follow simple directions and inability to read, write, and perform simple calculations; or

B. IQ of 59 or less (see 12.00B4); or

C. IQ of 60 to 69 inclusive (see 12.00B4) and a physical or other mental impairment imposing additional and significant work-related limitation of function.

20 C.F.R. Part 404, Subpart P, Appendix I § 12.05.

a minimal effect on the individual['s ability to do basic work activities] that [it] would not be expected to interfere with his ability to do [most] work, irrespective of his age, education, and work experience.'" *Trafton v. Heckler,* 575 F.Supp. 742, 745 (D.Me. 1983), *quoting* 43 Fed.Reg. 9284, 9296 (March 7, 1978). *See Moore v. Heckler,* 575 F.Supp. 180, 184 (D.Me.1983).

■ The Court finds that plaintiff's mental retardation "[deserves] to be considered," *Trafton v. Heckler,* 575 F.Supp. at 745 (citations omitted), and that the Secretary's finding of nonseverity is not supported by substantial evidence. At the hearing before the ALJ, plaintiff testified that his education ended with the sixth grade, that he is unable to read or write, except for signing his name, and that he is unable to accomplish even the most rudimentary arithmetic functions. Tr. 26–27. A psychological report prepared by John Burns, a licensed psychologist, concludes that the results of the Wechsler Adult Intelligence Scale test did not indicate an intellectual potential much above the full scale I.Q. rating of 64 achieved on the test, Tr. 115–16, a score which is "characteristic of approximately the lowest 2 percent of the general population," 20 C.F.R. Part 404, Subpart P, Appendix I § 12.00 B 4. The ALJ's discussion of plaintiff's mental retardation is limited to the unexplicated conclusion that plaintiff "gets along in the world quite well," Tr. 13. The only testimony referred to by the ALJ is plaintiff's statement that he is careful not to get "clipped." *Id.* [Of course, it is entirely unclear how this claimant can reliably evaluate whether or not he has been "clipped."]

The ALJ's conclusion is far too generalized, lacking the particularity of findings necessary to permit meaningful judicial review. The record does indicate that plain-

tiff lives in his own apartment, does his own cooking, cleaning, and laundry, that he manages his own funds, and that while employed as a construction laborer for 17 years he was a steady and reliable worker who performed his job to the satisfaction of his employer. *See* Tr. at 31, 34, 36, 39. The record also discloses that though he is somewhat of a loner, plaintiff likes people, is not argumentative, and regularly visits with his friends. Tr. 36, 48. John Burns notes in his report that, during his interview with the plaintiff, plaintiff was cooperative, well motivated, and able to understand what was expected of him. Tr. 115. However, the ALJ does not even recite this evidence in his decision, let alone analyze how this testimony, in light of plaintiff's retardation and illiteracy, affects plaintiff's ability to understand, carry out and remember simple instructions, use judgment, deal with changes in a routine work setting, or respond appropriately to supervisors, coworkers and usual work situations.[2] *See* 20 C.F.R. § 404.1521.

The Court's conclusion is buttressed by section 12.00 B 4 of the Secretary's listings, which provides that a claimant's intelligence level, as measured by standardized intelligence tests, is the primary determinant in assessing the "degree of impairment." 20 C.F.R. Part 404, Subpart P, Appendix I § 12.00 B 4. To assist in the overall analysis, section 12.00 B 4 requires a consideration of the effects of the impairment "in one or more of the following areas: learning, maturation, and social adjustment," *id.* The report of John Burns clearly describes the limitations imposed by plaintiff's retardation on his learning ability. The report notes that plaintiff left school in the fifth grade at the age of 14, after having repeated some grades and after apparently having been "socially promoted," *see* Tr. 115, "as he is illiterate with

---

2. Indeed, in his decision the ALJ adverts only to some of the physical criteria prescribed by § 404.1521(b)(1), making no mention of the criteria listed in § 404.1521(b)(2)–(6). The former seem clearly related to an analysis of plaintiff's physical problem, and not at all relevant to an evaluation of his mental retardation and illiteracy.

The ALJ relies on the reports of two medical consultants for the State of Maine Disability Determination Services, both of whom found plaintiff's impairments not severe. Tr. 13. Plaintiff correctly points out that both reports predate the psychological evaluation of John Burns and therefore have no bearing on the severity of plaintiff's mental retardation.

the sole exception of his name," *id.* The report also notes that plaintiff cannot make change and that he has "an incomplete understanding of the relative value of the various coins." *Id.*

Here, the ALJ erroneously relied on John Burns' characterization of plaintiff's mental retardation as "mild," in support of the ALJ's finding of "non-severity," notwithstanding that the regulations require that plaintiff's I.Q. be used as the primary determinant in assessing the degree of impairment, and notwithstanding the admonition that a mild retardation does not necessarily mean only a mild impairment, *cf. Sitar v. Schweiker*, 671 F.2d 19, 21 (1st Cir.1982) ["moderate depression does not necessarily mean only moderate impairment"]. The Court cannot escape the conclusion that a fair assessment of plaintiff's mental retardation was prematurely aborted at the threshold through recourse to the severity test.[3]

The Court finds that plaintiff has failed to show that his osteoarthritis presents a severe impairment. Despite some restricted motion on lateral bending, Dr. John McGinn notes that plaintiff was able to bend forward approximately 80 degrees without difficulty. Plaintiff's knee and ankle jerks were active and equal, and there was no measurable atrophy, sensory loss or weakness of the toe extensors. Tr. 96. Dr. McGinn opined that plaintiff could perform moderate work and that plaintiff did not require further treatment. *Id.*

Plaintiff argues that Dr. McGinn's diagnosis of moderately advanced osteoarthritis "must clearly impact on plaintiff's ability to perform physical functions such as walking, standing, lifting, pushing, pulling and reaching." Memorandum in Support of Plaintiff's Motion for Summary Judgment, at 4. However, the record discloses no such limitations. Dr. McGinn observes that plaintiff's back complaints were vague, indicating only an "aching sensation" in his lower lumbar spine, which "comes and goes." Tr. 96. This observation is entirely consistent with plaintiff's testimony. Plaintiff testified that his *worst* ailment is pain in the back of his neck which "comes and goes." Tr. 32. Plaintiff testified that though his back does bother him, depending to some extent on the weather, it has not been "bad lately." Tr. 33. All plaintiff takes for pain is aspirin, *id.*, and with the exception of his visit with Dr. McGinn and hospitalization for surgery on his knee 10 or 15 years ago, he has not sought any treatment for his neck or his back.

■ As to physical capacities, the record discloses that plaintiff is capable of walking for 45 minutes without difficulty, bending and lifting. Tr. 36, 40. Although plaintiff testified that he has trouble sitting, the difficulty apparently stems from the fact that his "nerves get tight" and not because of any limitations imposed by his osteoarthritis. Tr. 47. Moreover, plaintiff's daily activities simply do not suggest the kinds or degree of limitation that plaintiff contends "must" result from his low back condition. *See, e.g.,* Tr. at 34–36. The Court would note that plaintiff's representative at the hearing before the ALJ did not examine the plaintiff at all, *see* Tr. at 48. The ALJ conducted a reasonably thorough examination and he was not required to go to inordinate lengths to develop the plaintiff's case. *See Thompson v. Califa-*

---

3. Had plaintiff's I.Q. rating been 5 points lower he would be disabled under listing 12.05 B. *See* note 1 *supra.* Moreover, although not mentioned by the ALJ or raised by the plaintiff, Social Security Ruling 82–55(9)(a) provides that an I.Q. of 80 or above "in all major areas of intellectual functioning" is not severe. It is implicit in SSR 82–55(9)(a) that the Secretary should carefully consider and explicate the severity of the impairment of a mentally retarded claimant with an I.Q. *below* 80. Since the severity of plaintiff's mental retardation is to be de-

termined primarily with reference to his WAIS score of 64, a mere 5 points above the disabling impairment listed in 12.05 B, the Secretary must give careful consideration to plaintiff's low I.Q. and carefully articulate her evaluation, in order to enable meaningful judicial review.

Moreover, had plaintiffs' mental impairment been evaluated under the Secretary's Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, rules 201.01 & 202.01, plaintiff would be found disabled.

*no,* 556 F.2d 616, 618 (1st Cir.1977). The record, as developed, fully warrants the conclusion that plaintiff's low back impairment is not severe.

Accordingly, the case must be remanded. On remand the Secretary must make full and detailed findings on the severity of plaintiff's mental retardation, employing the definition of severity set out in *Trafton v. Heckler, supra* and *Moore v. Heckler, supra.* Should the Secretary determine that plaintiff has a severe impairment, she must proceed with the sequential evaluation set out in 20 C.F.R. §§ 404.1520, 416.-920.

It is therefore ORDERED that the decision of the Secretary is VACATED and the cause REMANDED to the Secretary for further proceedings in accordance herewith.