779 F.2d 50
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
SUE N. FREEMAN, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 85-5122
 United States Court of Appeals, Sixth Circuit.
 10/4/85
 
 REVERSED AND REMANDED
 M.D.Tenn.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
 BEFORE: ENGEL and MILBURN, Circuit Judges, and WEICK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Sue N. Freeman appeals from the decision of the district court affirming the final decision of the Secretary denying plaintiff's application for disability and supplemental security income benefits under the Social Security Act. The final decision of the Secretary is that although plaintiff suffers from severe impairments that prevent her from performing her past relevant work, plaintiff maintains the residual functional capacity to perform sedentary and light work and, therefore, using Rules 201.18-.20 of Table No. 1 or Rules 202.17-.19 of Table No. 2 of 20 C.F.R. Part 404, Subpart P, Appendix 2, 'as a framework for decision making,' plaintiff is not ?? Because the Secretary erred in applying these ?? rules to plaintiff's claim, we reverse.
 
 I.
 
 2
 Our inquiry is limited to a determination of whether substantial evidence exists in the record, taken as a whole, to support the Secretary's decision and to a review for any legal errors. Kirk v. Secretary of Health and Human Services, 667 F.2d 524 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). Although plaintiff has raised various arguments, we believe this case turns on her assertion that the Secretary erred in applying the 'grid' in the face of uncontradicted evidence that plaintiff suffers from nonexertional impairments. When a claimant suffers from such an impairment that is severe enough to restrict a full range of gainful employment at the designated level,[1] a nonguideline decision giving full consideration to the claimant's limitations is necessary. Kirk, supra, 667 F.2d at 537. In addition, as the Secretary determined that plaintiff is not capable of performing her past relevant work, the burden shifted to the Secretary to demonstrate the existence of jobs in the national economy that plaintiff can perform. Kirk, supra, 667 F.2d at 529.
 
 
 3
 On October 14, 1983, plaintiff underwent psychological testing by Thomas J. Suren, M.A., and Dr. Maureen Hart, Ph.D. The results of the Wechsler Adult Intelligence Scale indicated that plaintiff functions within the borderline range of intelligence with a performance I.Q. of 75. The psychologists noted that the I.Q. score was age-corrected in that her scores were compared to other individuals above the age of forty-five. If her scores had been compared to a thirty-year old, plaintiff would have scored in the mild range of mental retardation. The psychologists felt that it was unlikely plaintiff's performance abilities were sufficient to allow her to compete adequately in the job market.
 
 
 4
 Plaintiff was again tested by Mr. Suren and Dr. Hart in January, 1984. Based on two clinical interviews and administration of the Minnesota Multiphasic Personality Inventory and the Rorschach Projective Test, the psychologists diagnosed dysthymic disorder, a depressive condition manifested through marked restriction of daily activities, initial insomnia, diminished self-worth, constriction of interests, and the impaired ability to relate to others. These characteristics were said to be of vocational significance in that they interfere with plaintiff's ability to acquire new skills and relate effectively to supervisors and co-workers.
 
 
 5
 Although no contradictory evidence was presented, the Administrative Law Judge ('ALJ') did not agree with the conclusions of Dr. Hart and Mr. Suren because 'when her level of education, past work experience, and socioeconomic status are considered, the test results obtained do not appear to be especially inconsistent with what one would expect from such a profile.'
 
 
 6
 We are at a loss to understand this evaluation of the evidence. It appears that the ALJ feels that an I.Q. performance score indicating a borderline range of intelligence and the presence of a dysthymic disorder are to be expected from a forty-eight year old woman with a seventh grade education whose past work experience was as a commercial sewing machine operator. Not only are we unwilling to make such an unwarranted conclusion, but we also not that such an observation is quite irrelevant.
 
 
 7
 Dr. Hart's opinion that plaintiff's I.Q. is vocationally significant is consistent with the Secretary's own regulations. Social Security Ruling 82-55(9)(a) provides that an I.Q. of 80 or above in all major areas of intellectual functioning is not severe. See Holmes v. Heckler, 594 F. Supp. 536, 539 n.3 (D. Maine 1984) ('It is implicit in SSR 82-55(9)(a) that the Secretary should carefully consider and explicate the severity of the impairment of a mentally retarded claimant with an I.Q. below 80.'); cf. 20 C.F.R. Part 404, Subpart P, Appendix 2, Sec. 201.00(h) (example 2). Moreover, we find disingenuous the Secretary's argument that plaintiff has demonstrated through her past employment the ability to work despite her nonexertional impairments. First, the Secretary's reliance on plaintiff's past work history is misplaced in light of the Secretary's finding that plaintiff is incapable of performing that work. Second, we do not believe the Secretary is justified in finding plaintiff presently capable of performing a wide range of sedentary jobs just because in the past she was able to operate a sewing machine in a shoe factory despite her mental impairment. Although such reasoning may not be completely irrational, we do not believe it is a sufficient substitute for the Secretary's burden of identifying jobs in the national economy that plaintiff is capable of performing.
 
 
 8
 The danger of reaching an erroneous decision through the application of the grid in this case is further demonstrated by the fact that if plaintiff had been two years older at the time of the decision, the grid would have indicated a finding of disabled. See 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1, Rules 201.09-.10. Thus, we hold that the ALJ's refusal to consider plaintiff's nonexertional impairments is not supported by the record and that, therefore, application of the grid was error.
 
 
 9
 Plaintiff argues that she is entitled to an order directing an award of benefits rather than a remand for further administration proceedings. In cases where there is an adequate record, benefits may be awarded by an appellate court if proof of disability is overwhelming or proof of disability is strong and evidence to the contrary is lacking. See, e.g., Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053-54 (6th Cir. 1983). However, we do not believe this is such a case.
 
 III.
 
 10
 Accordingly, the decision of the district court is REVERSED and this case is REMANDED to the district court with instructions to further REMAND to the Secretary for input by a vocational expert and a nonguideline determination of plaintiff's application. See Kirk, supra, 667 F.2d at 535, 540.
 
 
 
 [1]
 The designated level in this case is sedentary work. Although the ALJ found plaintiff capable of performing light work as well, the Secretary conceded in her brief at 4 that the district court implicitly rejected that finding and the Secretary has not disputed that holding