**Edward M. HALL, Plaintiff,**

v.

**Margaret HECKLER, Secretary of Health & Human Services, Defendant.**

**No. C–84–2932–WWS.**

United States District Court, N.D. California.

Feb. 11, 1985.

Kim Malcheski, San Francisco, Cal., for plaintiff.

Sandra L. Willis, Asst. U.S. Atty., San Francisco, Cal., for defendant.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

### INTRODUCTION

This is an appeal pursuant to 42 U.S.C. § 405(g) from a final decision of the Secretary of Health and Human Services denying plaintiff Edward M. Hall disability and supplemental security income ("SSI") benefits. Plaintiff claims he is disabled by gout, degenerative joint disease, chronic obstructive pulmonary disease and alcoholism. The administrative law judge ("ALJ") concluded that plaintiff's impairments were not severe and denied benefits. This case is before the Court on cross-motions for summary judgment. In the alternative,

plaintiff requests remand of the matter to the Secretary.

## I. BACKGROUND OF THE CLAIM

Plaintiff filed an application for disability insurance and SSI benefits on June 23, 1982, alleging disability beginning May 1, 1982, due to gout and dizzy spells. Upon the Secretary's denial of these applications, plaintiff filed a Request for Reconsideration which resulted in denial of benefits on Reconsideration. Plaintiff then requested a hearing before an ALJ, which was held on July 18, 1983. On December 29, 1983, the ALJ who conducted the hearing issued a decision finding that plaintiff did not have impairments sufficiently "severe" to be considered disabling under the Act and regulations. Plaintiff filed a Request for Review by the Social Security Appeals Council on February 22, 1984. The Appeals Council denied review on April 15, 1984. The decision of the ALJ denying disability and SSI benefits thus became the final decision of the Secretary. Plaintiff commenced this action for review of the Secretary's decision pursuant to 42 U.S.C. § 405(g) on August 20, 1984.

## II. EVIDENCE PRESENTED TO THE ALJ

The ALJ reviewed medical reports from three doctors. Dr. Bruce Thompson treated plaintiff from approximately May, 1982, to February, 1983. Dr. Marvin Grieff examined plaintiff at the government's request on August 11, 1982. Dr. W.L. Bentley treated plaintiff most recently, having first examined plaintiff in approximately February, 1983.

Plaintiff was 58 years old at the time of the hearing and has a high school education. He has worked at various times as a welder, maintenance mechanic and machinist rigger. His most recent job was as a forklift operator on a seasonal basis with a cannery. The last season in which he worked ended in September, 1981. At that time, plaintiff complained of gout, back pain, dizziness and shortness of breath.

Dr. Bruce Thompson diagnosed plaintiff as having chronic obstructive pulmonary disease, gout, rectal diverticulosis, ethano-losis, chronic bronchitis and degenerative joint disease with post trauma arthalgia in the left elbow. On June 2, 1982, an ECG was interpreted as "probably normal"; a chest x-ray revealed no acute cardiopulmonary disease or secondary signs to suggest chronic obstructive pulmonary disease, and a barium enema on June 7, 1982, revealed diverticulosis coli. Examination findings on December 15, 1982, showed mild tenderness over the left elbow extending from the elbow into the forearm. Dr. Thompson also noted a slight decrease in range of motion in the metacarpal joints of both hands. Cardiopulmonary examination was within normal limits. A chest examination showed no indication of acute pathology. Percussion was within normal limits and equal bilaterally, and no acute changes in the chest were distinguished. Balance, gait and coordination were within normal limits. Dr. Thompson also stated that plaintiff had been repeatedly advised on withdrawal from alcohol.

A consultative internal medical examination was performed on August 11, 1982, by a Board-certified internist, Dr. Marvin Grieff. The report showed that plaintiff described dyspnea on exertion with episodes of wheezing almost every day. Plaintiff smoked two packs of cigarettes per day. He stated that he could walk two blocks and climb a flight of stairs before experiencing shortness of breath. He had no orthopnea, paroxysmal nocturnal dyspnea or peripheral edema. Dr. Grieff reported that physical findings indicated no significant abnormalities except for some rhonchi bilaterally. Plaintiff had an onset of intermittent swelling, pain and redness of the joints of the knees, feet and hands in 1975. He has been maintained on medication for gout with flare-ups of gout noted approximately every two months, lasting several days at a time. Dr. Grieff described deformity of the thumbs, particularly at the interphalangeal joints and greater on the left, and with great toes, greater on the right. Plaintiff was able to make a fist, had near normal grip strength, and was able to approximate the thumb to various

digits. While plaintiff complained of low back pain on the left without radiation approximately once a month with bending and lifting activities, the physical examination did not define any limitation of motion, malalignment, spasm or neurological deficits. Plaintiff's untreated blood pressure was 150/102, and Dr. Grieff stated that there had been no end organ complications or catastrophic vascular occlusive episodes. The pulmonary function study indicated a moderate obstructive abnormality; however, the post-bronchodilator study, with optimal performance by the patient, showed only a mild obstructive abnormality.

Plaintiff was followed by Dr. W.L. Bentley for chronic obstructive pulmonary disease, gout, alcoholism and degenerative joint disease. On July 13, 1983, Dr. Bentley completed a Functional Capacities Evaluation form indicating plaintiff would be capable of light and sedentary work as defined at 20 C.F.R. § 404.1567(b). Although there is no laboratory or clinical evidence in the record accounting for such restrictions, Dr. Bentley reported that plaintiff was limited to six hours of sitting, three hours of standing, and four hours of walking per day. Plaintiff could frequently bend and occasionally squat, crawl, climb, and reach above the shoulder. Dr. Bentley believed plaintiff could lift up to 20 pounds. He was restricted from moving machinery, heights, noise, and dusts.

Plaintiff testified that he finished high school and worked as a fork lift operator until 1981. At that time he was laid off from his seasonal work, but simultaneously developed problems lifting and experienced back pain and breathing problems. He thought he could lift 10–15 pounds, walk four blocks and sit and stand for about one hour before experiencing pain. Plaintiff stated that he took aspirin twice a day at one point for his back pain and said he later also took codeine. He testified to problems with gout and swelling twice a week and exhibited definite swelling and joint deformity of the large toe of the right foot at the hearing. He had not been hospitalized in the past year. He stated that while he

drank quite a bit in the past, he had cut back because of admonitions from his doctor and now drank approximately one pint every few days for relaxation and to take away pain. He denied drinking as much as the doctors indicated. He testified that he was able to do his own laundry and shopping and came to the hearing on the bus. He told the ALJ that he had a few friends and left the house almost every day. He used a cane occasionally. He does not use a back brace.

## III. THE ALJ'S DECISION

The ALJ found that the plaintiff did not have any impairments which significantly limit his ability to perform basic work-related functions. Therefore, he concluded that plaintiff does not have a "severe" impairment under 20 C.F.R. §§ 404.1520(c) and § 416.920(c).

## IV. EVALUATION OF THE ALJ'S DECISION

Plaintiff asserts that the Secretary's decision should be reversed, or, in the alternative, remanded. First, plaintiff challenges the validity of the regulations upon which the ALJ relied in denying disability and SSI benefits to plaintiff. Alternatively, plaintiff argues that even if the regulation is construed as valid, it was nevertheless invalid as applied by the Secretary. Second, plaintiff argues that Social Security Ruling 82–55, referred to by the ALJ, is void under the Administrative Procedures Act, the Freedom of Information Act, and the Fifth Amendment. Third, plaintiff argues that the Secretary's decision is not supported by substantial evidence. He contends that the ALJ erred in rejecting the opinion of Dr. Bentley and failing to consider plaintiff's subjective complaints of pain.

### A. *Validity of the Severity Regulation*

The Secretary, in denying plaintiff's claim, found that he did not have a "severe" impairment within the meaning of Agency regulations, 20 C.F.R. §§ 404.-1520(c) (disability claims) and 416.921(c) (SSI claims). Plaintiff contends that these regulations are inconsistent with the Social

Security Act in permitting the Secretary to deny disability benefits on the basis of medical evidence alone without considering vocational factors of age, education and work experience.

### 1.

■ Under 42 U.S.C. § 423(d)(1)(A) and 1382c(a)(3)(A), an individual shall be considered disabled if he is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

A physical or mental impairment is defined in 42 U.S.C. § 423(d)(3) and 1382c(a)(3)(C):

> [A] "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

In 1967, the Social Security Act was amended to add the following language for purposes of applying the definition of disability:

> [A]n individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.
>
> 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B)

The Secretary is authorized to establish rules and regulations, consistent with the Act, governing the determination of disability claims. Pursuant to this authority, the Secretary established a five-step procedure for determining whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 and 416.920. The steps were summarized in *Goodermote v. Secretary of Health, Education and Welfare*, 690 F.2d 5, 6–7 (1st Cir.1982) as follows:

> First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment? A severe impairment means an impairment which "significantly limits his or her physical or mental capacity to perform basic work-related functions." If a claimant does not have an impairment of at least this degree of severity, the claimant is automatically considered not disabled.
>
> Third, does the claimant have an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.
>
> These first three tests are "threshold" tests.... If, however, his ability to perform work-related functions is impaired significantly (test 2) but there is no "Appendix 1" impairment (test 3), the SSA goes on to ask the fourth question:
>
> Fourth, does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.
>
> Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled.

See, also, *Chico v. Schweiker*, 710 F.2d 947, 951 (2d Cir.1983).

In this case, the ALJ determined at the second step that plaintiff did not have a "severe" impairment on the relevant date

and was therefore not entitled to disability or SSI benefits.

The second step is based on the "severity" regulation which determines whether a claimant's impairment is sufficiently severe to allow consideration of the next steps of the procedure. This regulation provides:

(c). *You must have a severe impairment.* If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education and work experience....

20 C.F.R. §§ 404.1520(c), 416.920(c).

"Basic work activities" are defined as including the ability to walk, stand, sit, lift, push, pull, reach, carry, handle, see, hear, speak, understand simple instruction, remember simple instruction, and to use judgment. 20 C.F.R. §§ 404.1521(b) and 416.921(b). Plaintiff attacks the regulation on the ground that it allows the Secretary to consider the "severity" of an impairment without considering the vocational prospects of the individual, contending that this is inconsistent with the statute.

Plaintiff's argument reflects a misreading of the statutory provisions. The basic statutory definition of disability speaks of "an inability to engage in any substantial gainful activity by reason of any *medically determinable physical or mental impairment* which can be expected to result in death or which has lasted and can be expected to last for a continuous period of not less than 12 months." (emphasis added.)

42 U.S.C. 423(d)(1)(A). It makes no reference to vocational factors.

As pointed out above, in 1967, the statutory definition was amended by adding language providing that an individual would be considered under a disability:

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) and 1382c(a)(3)(B).

The legislative history accompanying the amendment establishes that Congress intended to restrict eligibility for disability benefits. The report of the Senate Committee on Finance discussed the erosion of the disability definition in 42 U.S.C. § 423(d)(1)(A) and the resulting increase in the number of persons considered disabled within that definition. S.Rep. No. 744, 90th Cong., 1st Sess. (1967) *reprinted in* 1967 U.S.Code Cong. & Ad.News, 2834, 2880.[1] That erosion was due to a variety of factors including greater awareness of the availability of disability benefits, improved methods of developing evidence of disability, more effective ways of assessing the total impact of an individual's impairment on his ability to work, and, significantly, judicial interpretations of the definition which enlarged its scope beyond what Con-

1. The concept of "disability" was added by a 1954 amendment to the Act preserving the insurance rights of individuals totally disabled prior to retirement. Disability was defined in pertinent part as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be long-continued and indefinite duration." P.L. 761 § 106(d), 68 Stat. 1052, 1080. Two years later Congress enacted disability insurance coverage, incorporating the 1954 definition of disability. P.L. 84–880 § 103(a),

70 Stat. 807, 815. In 1965 the duration requirement was liberalized, but the language defining the nature of the impairment has never been changed. The Senate Finance Committee, in its discussion of the 1967 amendments, stated "The original provision § 42 U.S.C. § 423(d)(1)(A) was designed to provide disability insurance benefits to workers who are so *severely disabled* that they are unable to engage in any substantial activity." (emphasis added.) S.Rep. No. 744, 90th Cong., 1st Sess. (1967) *reprinted in* 1967 U.S.Code Cong. & Ad.News, 2834, 2882.

gress originally had intended. *Id.* at 2880–2882.

To remedy the situation, the definition of disability was revised "to provide guidelines to re-emphasize the predominant importance of medical factors in the disability determination." *Id.* at 2882. The Committee report stated:

The original provision was designed to provide disability insurance benefits to workers who are so severely disabled that they are unable to engage in any substantial gainful activity. The bill would provide that *such an individual would be disabled only if it is shown that he has a severe medically determinable physical or mental impairment* or impairments; that if, despite his impairment or impairments, an individual still can do his previous work, he is not under a disability; and that if, considering the severity of his impairment together with his age, education, and experience, he has the ability to engage in some other type of substantial gainful work that exists in the national economy even though he can no longer do his previous work, he also is not under a disability....

*Id.* (Emphasis added)

Reflecting Congress's intent to limit the number of persons eligible for benefits, the statute establishes three levels of eligibility that each claimant must meet: first, a claimant must have a severe physical or mental impairment; second, a claimant must be unable to return to his prior employment; and third, the claimant's impairment must prevent him, considering his age, education and work experience, from performing any other substantial gainful work existing in the national economy.

The regulations at 20 C.F.R. §§ 404.1520 and 416.920, implement the statutory scheme. Sections 404.1520(c), (d) and 416.-920(c), (d) establish a threshold test for disability determinations that focuses on medically determinable impairments. Sections 404.1520(e), (f) and 416.920(e), (f) reflect the statute's intent that the severe impairment be of such a degree that the claimant cannot perform past work or, in light of vocational factors, any other work in the national economy.

The interpretation of the statute as requiring a threshold severity test is confirmed by the Act's most recent legislative history. The 1984 Social Security Disability Benefits Reform Act, Pub.L. No. 98–460, 98 Stat. 1794 (1984), provides, in part, that the Secretary must consider the combined effect of all of an individual's impairments in determining disability. The Senate Finance Committee Report explained the purpose of the 1984 amendment as follows:

In adopting this amendment, the Committee wishes to emphasize that the new rule is to be applied in accordance with the existing sequential evaluation process and is not to be interpreted as authorizing a departure from that process. As the Committee stated in its report on the 1967 amendments, an individual is to be considered eligible "only if it is shown that he has a severe medically determinable physical or mental impairment or impairments." The amendment requires the Secretary to determine first, *on a strictly medical basis and without regard to vocational factors,* whether the individual's impairments, considered in combination, are medically severe. If they are not, the claim must be disallowed. (emphasis added.)

S.Rep. No. 466, 98th Cong., 2d Sess. 22 (1984).

The House Ways and Means Committee, considering the same amendment, stated:

The committee believes that in the interests of reasonable administrative flexibility and efficiency, a determination that a person is not disabled may be based on a judgment that the person has no impairment, or that the impairment or combination of impairments are slight enough to warrant a presumption that the person's work ability is not seriously affected. The current "sequential evaluation process" allows such a determination, and the committee does not wish to eliminate or seriously impair use of that process.

H.R.Rep. No. 432, 98th Cong., 2d Sess. 43 (1984).

And when the amendment went to conference, the report of the conferees again approved the sequential evaluation process, including use of the severity regulation, as follows:

> The conferees also believe that in the interests of reasonable administrative flexibility and efficiency, a determination that an individual is not disabled may be based on a judgment that an individual has no impairment, or that the medical severity of his impairment or combination of impairments is slight enough to warrant a presumption, even without a full evaluation of vocational factors, that the individual's ability to perform [substantial gainful activity] is not seriously affected. The current "sequential evaluation process" allows such a determination and the conferees do not intend to either eliminate or impair the use of that process.

H.Conf.Rep. No. 98–1039, 98th Cong., 2d Sess. 30 (1984), U.S.Code Cong. & Admin. News 1984, 3038, 3088.

Thus the statutory language, particularly when read in the light of its history, plainly establishes the validity of the severity regulation.

### 2.

■ The Court is aware that a number of district courts have recently issued decisions finding the severity regulation to be invalid under the statute.[2] For the most part those decisions ignore the legislative history previously discussed. And none address the key to the proper interpretation of the statute, i.e. that the reference to vocational factors occurs not in § 423(d)(1)(A) which contains the definition of disability but in the 1967 amendment § 423(d)(2)(A) which limits eligibility. The statute does not require vocational factors to be considered in determining whether a person has a medically determinable impairment which renders him unable to engage in any substantial gainful work. These factors become relevant only under subsection (2)(A) which provides, in effect, that even if a person meets the standard of subsection (1)(A), he may be considered disabled *only if* his impairment is so severe that considering his age, education and work experience he cannot engage in any substantial gainful work. The plain and unambiguous import of that language is to preclude a disability determination in the case of a person who, though otherwise disabled, may, because of the *favorable* impact of vocational factors such as age, education or work experience, nevertheless be able to engage in some gainful employment.[3] An automobile mechanic, for example, although disabled from performing his customary work, will not be eligible if, by reason of age, education and work experience, he has the ability, say, to do bookkeeping. Under the statute, therefore, the Secretary is required to consider vocational factors only against a claim, not in support of it. Cf. *Johnson v. Heckler,* 593 F.Supp. 375, 379 (N.D.Ill.E.D.1984).

With due respect, the Court finds itself unable to follow the decision of the Eastern

---

**2.** No court of appeals has yet addressed the issue. *Delgado v. Heckler,* 722 F.2d 570, 574 (9th Cir.1983), merely contains a passing comment without analysis or discussion that the invalidity argument presents a "very troublesome contention." In *Chico v. Schweiker,* 710 F.2d 947, 953 (2d Cir.1983), the court characterized the matter as "a close question" but did not resolve it. However, in *Wallschlaeger v. Schweiker,* 705 F.2d 191 (7th Cir.1983), the court of appeals discussed and upheld the application of the severity regulation to the claim before it without raising any question as to its validity. See also *Goodermote v. Secretary,* 690 F.2d 5, 7 (1st Cir.1982).

**3.** Thus if the statute read that a person may be considered disabled "only if his ... impairments are so severe that he can engage in no substantial gainful work," the Secretary arguably would be precluded from considering vocational factors, such as training and experience, in determining that a person disabled from doing certain types of work is nevertheless capable of doing other work. The inclusion of the reference to these factors in the 1967 amendment therefore tends to narrow rather than enlarge eligibility by enlarging, rather than restricting, the Secretary's discretion. That is the interpretation the Senate Committee gave the language in 1967. (See excerpt quoted at p. 1175, *supra* )

District of California in *Smith v. Heckler*, 595 F.Supp. 1173 (1984). In this Court's view, *Smith* and the decisions it relies on misread the statute by finding in it a requirement (nowhere stated) that the Secretary must consider vocational factors in determining whether a disability exists.

Specifically *Smith* held, following *Hundrieser v. Heckler*, 582 F.Supp. 1231, 1237 (N.D.Ill.1984), that "[n]othing in this basic statutory definition of disability suggests that claimants have to prove that they suffer from a 'severe' impairment in order to qualify as disabled." Yet, that is precisely the purpose and effect of the 1967 amendment in subsection (2)(A). That it means what it says is confirmed by the legislative history previously quoted.

*Smith* also relied on decisions in this and other circuits that a claimant establishes a prima facie case of disability by showing a physical or mental impairment that prevents past relevant work. It reasons that application of the severity regulation may deny a claimant the opportunity to make a prima facie case based on inability to do past work. The burden shifting rule applied in those decisions does not, however, address the question of the Secretary's statutory authority to impose a threshold severity test, nor could it inhibit the exercise of that authority to the extent the statute confers it. *See also, Anderson v. Schweiker*, 651 F.2d 306, 309 (5th Cir.1981), recognizing that the severity test is not inconsistent with the burden shifting rule:

> The claimant bears the burden of proving a severe impairment that makes him unable to pursue his customary employment. Once he does so, however, the burden shifts to the Secretary to prove that the claimant can perform another type of substantial gainful employment.

A variation of the reasoning in *Smith* is found in *Johnson v. Heckler, supra,* where the court held that by substituting "basic work activities" in the second step for "previous work," the severity regulation imposes a burden of proof in excess of that provided for by the statute which, according to the court, provides that a claimant to make a prima facie case need only show that an impairment prevents him from doing his previous work. *Id.*, 593 F.Supp. at 380. This Court finds nothing in the statute defining a prima facie case. Subsection (2)(A) simply states that disability shall be determined *only if* the impairment is so severe that the claimant *"is not only unable to do his previous work but cannot ... engage in any other substantial gainful work..."* It is difficult to see how Congress could have been more explicit in requiring a finding of inability to engage in work activities generally, not only previous work.

In *Dixon v. Heckler*, 589 F.Supp. 1494 (S.D.N.Y.1984), the court, in holding the severity regulation invalid, relied on the difference between the relevant statutory definitions of disability for widows and widowers and that for workers. The provision applicable to widows and widowers is found in § 423(d)(2)(B), immediately following that applicable to workers quoted at p. 1173, *supra.* It bars a finding of disability "unless ... [the] physical ... impairments are of a level of severity ... deemed to be sufficient to preclude ... any gainful activity." The court reasoned that Congress' omission of the vocational factors in this subsection (B) supports the argument that vocational factors were to be taken into account in evaluating workers under subsection (A).

One likely explanation for the omission of vocational factors in subsection (B) is that it applies principally to widows many of whom (at least in the perception of Congress) would have no vocational history. As a class they are distinguishable from insured workers in that respect.

In any event, the omission of the vocational factors does not support the argument for invalidity if, as previously discussed, the effect of that language in subsection (2)(A) is to tighten, rather than to ease, the test for eligibility.

Some courts have dealt with the severity regulation by construing it narrowly, permitting it only to have a *de minimus* effect. See *Brady v. Heckler*, 724 F.2d 914

(11th Cir.1984); *McCullough v. Heckler,* 583 F.Supp. 934 (N.D.Ill.1984); *Hundrieser v. Heckler,* 582 F.Supp. 1231 (N.D.Ill.1984). Plaintiff also makes this argument, contending that even if the regulation is valid, it should be applied so as to exclude only "slight impairments" from further consideration. In *Brady v. Heckler,* the court determined that an impairment can be considered non-severe only if it has such a minimal effect on the claimant that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. 724 F.2d at 920. Such an interpretation is contrary to the plain language of the regulation. (See pp. 1173–1174, *supra*) The regulation does not describe non-severe impairments in terms of *de minimus* effect.

The regulation does not define the term "significant." Several courts have given it its commonly accepted meanings, among which are, according to Webster's Dictionary (2d. International Unabridged Ed.1948), "having a meaning" and "deserving to be considered." See *Trafton v. Heckler,* 575 F.Supp. 742, 743, 745 (D.Maine 1983); *Moore v. Heckler,* 575 F.Supp. 180, 184 (D.Maine 1983); *Jones v. Schweiker,* 551 F.Supp. 205, 208 (D.Md.1982). It does not follow, as some courts have argued, that an impairment which does not significantly limit physical or mental ability to perform basic work activities is necessarily one which has only a minimal effect on ability. By focusing on the opposite ends of the spectrum, those courts have ignored the range of impairments falling into the range between severe and *de minimus.*

Moreover, such an interpretation conflicts with Social Security Ruling 82–55 which provides directions to Agency personnel for the application of the severity regulation. That ruling contains a list of 20 impairments that serve to illustrate the level of severity intended by the statute and regulations. The listed impairments for the most part are not of a *de minimus* nature.

3.

Congress granted broad authority to the Secretary to adopt regulations to carry out the provisions of the Social Security Act. Section 405(a) provides:

The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder.

The manner in which a court should approach the determination of the validity of regulations adopted pursuant to the authority contained in the Social Security Act was considered and discussed by the Eighth Circuit in *McCoy v. Schweiker,* 683 F.2d 1138, 1144–45 (8th Cir.1982) (en banc) which involved the validity of the Secretary's Guidelines for disability determination. The reasoning of that opinion is squarely applicable here:

In *Batterton v. Francis,* 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977), the Supreme Court had before it the question of the validity of a regulation prescribing precise numerical standards for determining when the father of a needy child is unemployed. Eligibility for benefits payable to dependent children under Title IV of the Social Security Act, 42 U.S.C. §§ 601 et seq., turned on this definition. The statute, 42 U.S.C. § 607(a), said that whether a father is unemployed (that is, how much he is working) should be "determined in accordance with standards prescribed by the Secretary." In the course of an opinion upholding the challenged regulation, the Supreme Court noted first that "[o]rdinarily, administrative interpretations of statutory terms are given important but not controlling significance." 432 U.S. at 424, 97 S.Ct. at 2405. In the case before it, however,

the Court attributed a greater significance to the Secretary's regulation:

"... Congress in § 407(a) expressly *delegated* to the Secretary the power to prescribe standards for determining what constitutes 'unemployment' for purposes of AFDC–UF eligibility. In a situation of this kind, Congress entrusts to the Secretary, rather than to the courts, the primary responsibility for interpreting the statutory term. In exercising that responsibility, the Secretary adopts regulations with legislative effect. A reviewing court is not free to set aside those regulations simply because it would have interpreted the statute in a different manner.

The regulation at issue in this case is therefore entitled to more than mere deference or weight. It can be set aside only if the Secretary exceeded his statutory authority or if the regulation is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. §§ 706(2)(A), (C)."

432 U.S. at 425–26, 97 S.Ct. at 2405–06 (footnotes and citation omitted).

To the same effect are *Herweg v. Ray,* 455 U.S. 265, 272, 102 S.Ct. 1059, 1065, 71 L.Ed.2d 137 (1982), and *Schweiker v. Gray Panthers,* 453 U.S. 34, 44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981). In the course of an opinion upholding a regulation of the Secretary under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq. (Medicaid), the Court said in *Herweg,* 455 U.S. at 274, 102 S.Ct. at 1066:

"In view of Congress' explicit delegation of authority to give substance to the meaning of 'available' [the statutory term in question], the Secretary's definition of the term is 'entitled to more than mere deference or weight.' *Schweiker v. Gray Panthers, supra,* [453 U.S.] at [44, 101 S.Ct. at 2640,] quoting *Batterton v. Francis,* 432 U.S. 416, 426 [97 S.Ct. at 2406] (1977). Because Congress has entrusted the primary responsibility of interpreting a statutory term to the Secretary rather than to the courts, his definition is entitled to 'legislative effect'

*Schweiker v. Gray Panthers, supra* ...."

The Supreme Court has thus admonished us in strong terms that in the case of legislative, substantive regulations promulgated with express congressional authority, the Secretary of Health and Human Services, not the courts, is the primary interpreter of the statute. The language of 42 U.S.C. § 405(a), the statute invoked to authorize the Guidelines in question here, is different from that of the authorizing statutes in *Herweg, Gray Panthers, and Batterton,* but it is hardly less emphatic in the power delegated to the Secretary. We therefore approach our task mindful that *those attacking the Guidelines must make a strong case of inconsistency with the statute if they are to succeed.* (emphasis added)

Plaintiff has failed to make a case of inconsistency with the statute, let alone a strong case.

### B. *SSR 82–55*

The Social Security Administration promulgated Social Security Ruling (SSR) 82–55 "to enunciate the policy regarding non-severe impairments and to provide examples of impairments that are not severe." In this case, the ALJ relied on an example in SSR 82–55 to determine that plaintiff's impairment of degenerative joint disease is not severe. Specifically, the Ruling states that "[o]steoarthritis corroborated by x-ray findings, with symptoms of pain and stiffness of lumbar or cervical spine or major joints, and minimal abnormal findings on physical examination" is not severe. The ALJ concluded that in plaintiff's case, "the medical evidence is not even as strong as the example provided."

Plaintiff challenges the ALJ's use of SSR 82–55 on the ground that the ruling is a substantive ruling promulgated in violation of the Administrative Procedures Act, the Freedom of Information Act and the Fifth Amendment.

### 1. *Administrative Procedures Act*

■ Plaintiff argues that SSR 82–55 is a substantive rule which was not promulgated in accordance with the public notice and hearing requirements of § 553(b) of the Administrative Procedures Act ("APA"). The Secretary argues that SSR 82–55 is an interpretive, not a substantive rule, and is therefore exempt from the public notice provisions of the APA. Section 553(b) of the APA provides:

> Except when notice or hearing is required by statute, this subsection does not apply—(A) to interpretive rules, general statements of policy, or rules of agency organization, practice or procedure....

The distinction between interpretive rules and substantive rules is marked by a bright line. It was described in *Gibson Wine Co. v. Snyder*, 194 F.2d 329, 331–32 (D.C.Cir.1952) as follows:

> [S]ubstantive rules or legislative rules are those which *create* law ..., whereas interpretive rules are statements as to what the administrative officer thinks the regulation means.

In this case, the Court is of the view that the law was "created" by the severity regulation. SSR 82–55 merely states what the Secretary thinks it means in the form of guidelines; it does not add anything to the underlying regulation. It may be true that the enumeration of specific examples of non-severe impairments enhances the impact or effectiveness of the severity regulation but that is not a factor which bears on whether or not it is interpretative. *Rivera v. Becerra*, 714 F.2d 887, 890 (9th Cir.1983).

Plaintiff's reliance on *Herron v. Heckler*, 576 F.Supp. 218 (N.D.Ca.1983), is misplaced. In that case, limitations on eligibility for Supplemental Security Income contained in the Social Security Administration claims manual were held to be substantive rather than interpretive. The court reasoned that those limitations "do not simply set forth the Secretary's opinion as to what the governing statute and regulations 'mean'; they create precise, objective limitations where none existed before. The claims manual provisions contain language not found in the governing statute and regulations...." *Id.* at 231.

### 2. *Freedom of Information Act*

■ Plaintiff argues that the Secretary's failure to publish SSR 82–55 in the Federal Register violates § 552(a)(1)(D) of the Freedom of Information Act ("FOIA") which provides:

> Each agency shall separately state and currently publish in the Federal Register ... substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency....

For the reasons previously stated, SSR 82–55 must be considered to be an interpretive rule, not a substantive rule. The Ninth Circuit held in *Anderson v. Butz*, 550 F.2d 459, 463 (9th Cir.1977), that an agency is not required to publish any administrative directive which is "only a clarification or explanation of existing law or regulations." 5 U.S.C. § 552(a)(2) requires availability for public inspection or publication and sale of "those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register...." SSR 82–55 was published and is for sale to the public.

### 3. *Fifth Amendment*

Finally, plaintiff argues that the Secretary's failure to comply with the APA in promulgating SSR 82–55 and the ALJ's reliance upon such a ruling violates his Fifth Amendment right to due process. As discussed above, the interpretative nature of SSR 82–55 renders it exempt from the hearing and notice requirements of the APA.

### C. *Substantial Evidence*

■ Plaintiff claims that there is not substantial evidence to support the ALJ's finding that plaintiff's impairments were not severe. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Lewin v. Schweiker*, 654 F.2d 631, 633 (9th Cir.1981), quoting *Cox v. Califano*, 587 F.2d 988, 989–990 (9th Cir.1978). The ALJ may draw inferences logically flowing from the evidence and need not substitute the judgment of any expert witness for his own. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982). In determining whether there is substantial evidence to support the ALJ's findings, the court must look to the record as a whole, *Cox v. Califano*, 587 F.2d at 990, but resolution of factual conflict and the drawing of all reasonable inferences is the responsibility of the ALJ, and not the court. *Harvey v. Richardson*, 451 F.2d 589, 590 (9th Cir.1971).

As discussed in Section IV A, *supra* at p. 1173, 20 C.F.R. §§ 404.1520 and 416.920 require the ALJ to consider a disability claim in the five step sequence outlined in the regulations. In this case, the ALJ arrived at step 2 and found that plaintiff did not have a severe impairment, and thus was not disabled. The ALJ terminated further consideration of the claim.

A non-severe impairment is defined in §§ 404.1521(a) and 416.916(a) as an impairment which "does not significantly limit ... physical or mental abilities to do basic work activities." Basic work activities are defined in §§ 404.1521(b) and 416.920(b) as "abilities and aptitudes necessary to do most jobs," and include the ability to walk, stand, sit, lift, push, pull, reach, carry, handle, see, hear, speak, understand simple instruction, remember simple instruction, and to use judgment. *Id.*

Plaintiff argues that his impairments significantly limit his ability to perform basic work activities. He contends that he is unable to walk or climb stairs without shortness of breath. He is limited in his ability to stand for a significant length of time because of his gout and arthritis. These impairments also significantly restrict his capacity to perform all but the most basic hand movements. Plaintiff asserts that his physical capacities are further limited by his back pain, hypertension, alcoholism and chronic bronchitis.

A review of the record demonstrates that there was substantial evidence to support the ALJ's finding of nondisability. None of the medical evidence indicates that plaintiff would be unable to perform basic work activities. While disagreeing with his conclusion, the ALJ noted that Dr. Bentley, the only physician to render an opinion on plaintiff's work ability, reported that plaintiff is capable of performing light and sedentary work which might involve frequent lifting of objects up to 10 pounds or less and occasional lifting of objects up to 20 pounds. The ALJ, drawing inferences from the other medical evidence presented and from the record as a whole, concluded that plaintiff's work activities are not so restricted.

Dr. Grieff noted that plaintiff had his first onset of intermittent swelling and pain of the joints of the knees, feet and hands in 1975, with flare-ups of gout noted approximately every two months, lasting several days at a time. The doctor reported that plaintiff's condition is controlled with medication. The record indicated that plaintiff worked in jobs such as a forklift operator and machinist rigger between 1975 and 1981 while suffering from this condition. He stopped working in 1981 because he was laid off at the end of the season, not because of an incident of gout. Dr. Bentley opined that plaintiff is only occasionally limited in fine manipulation, grasping, pushing, pulling and the operating of foot controls. Dr. Grieff noted further that "while the claimant complained of low back pain on the left without radiation, approximately once a month with bending and lifting activities, the physical examination did not define any limitation of motion, malalignment, spasm or neurological deficits." Dr. Grieff reported that plaintiff has a normal range of motion without apparent pain and has straight leg raising to 90 degrees without distress. Dr. Bentley reported that plaintiff can bend frequently. Dr. Thompson determined that plaintiff's balance, gait and coordination were within normal limits.

Regarding the deformity in plaintiff's thumbs, the ALJ noted that plaintiff has near normal grip strength and there is no evidence to indicate that he could not use his hands to work. The pulmonary function report revealed only moderate abnormalities. Plaintiff is presently receiving no medication for hypertension and there is no end organ damage. Plaintiff himself disputed the doctors' finding of excessive alcohol consumption.

Plaintiff argues that the ALJ erred in summarily rejecting Dr. Bentley's opinion that plaintiff is capable only of sedentary work. The ALJ stated that "while Dr. Bentley indicates that claimant would be limited to sedentary work, it does not appear that there are sufficient objective signs and findings to support this conclusion." Plaintiff contends that the opinion of Dr. Bentley was supported by substantial evidence. As stated previously, the opinion of Dr. Bentley is not inconsistent with the ALJ's finding of nondisability. Moreover, the ALJ was within his perogative when he decided, based upon the entire record and upon his observations, to reject the opinion of Dr. Bentley. *Sample v. Schweiker*, 694 F.2d at 643. Contrary to plaintiff's assertion, the ALJ did not "summarily" reject the opinion; he stated his reasons for doing so and discussed the countervailing evidence. In rendering his decision, it is the ALJ's function to resolve any conflicts created by the evidence. *Richardson v. Perales*, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971); *Booz v. Secretary of Health and Human Services*, 734 F.2d 1378 (9th Cir.1984). Moreover, the opinion of Dr. Bentley was conclusory, supported by no objective data. Dr. Grieff, on the other hand, examined plaintiff and provided a detailed report of his clinical and laboratory findings. He conducted a pulmonary function study and x-rayed plaintiff's thumbs. The reports of Dr. Thompson, a treating physician, are equally detailed and accompanied by results of laboratory tests and special studies.

Plaintiff also argues that the ALJ failed to consider the plaintiff's subjective complaints of pain resulting from his gout and arthritis. This assertion is not supported by the record. The ALJ referred to plaintiff's testimony that he can walk four blocks and sit for about an hour before experiencing pain. He noted that plaintiff complained of gout and swelling twice a week and exhibited swelling of the right foot at the hearing. The ALJ also noted that plaintiff receives medication for this condition and is not inhibited in his activities. Plaintiff does his own laundry and shopping and leaves the house almost every day. It is for the ALJ to determine whether the subjective experience of pain is disabling, in light of all medical, personal and behavioral evidence. *Laffoon v. Califano*, 558 F.2d 253, 255 (5th Cir.1977). Here, the ALJ evaluated plaintiff's complaints of pain with due regard for credibility and the medical evidence of impairment. There is no basis in this record for the Court to set aside the ALJ's conclusion that plaintiff's pain is not so severe that he is unable to work.

## VI. DISPOSITION

The Secretary's conclusion that plaintiff is not disabled is supported by substantial evidence. Accordingly, defendant's motion for summary judgment is granted, and plaintiff's motion is denied.

IT IS SO ORDERED.